**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

---

**BAP NOS. PR 21-029, PR 21-030, PR 21-031**

---

**Bankruptcy Case No. 18-01866-ESL**

---

**ANGEL RUBEN MOJICA NIEVES and**
**KAREN MELISSA NAVARRO PASTOR,**
**Debtors.**

---

**ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE**
**ASOCIADO DE PUERTO RICO,**
**a/k/a AEELA,**
**Appellant,**

**v.**

**ANGEL RUBEN MOJICA NIEVES and**
**KAREN MELISSA NAVARRO PASTOR,**
**Appellees.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Enrique S. Lamoutte, U.S. Bankruptcy Judge)**

---

**Before**
**Finkle, Cary, and Panos,**
**United States Bankruptcy Appellate Panel Judges.**

---

**Javier Villariño, Esq., Carol J. Tirado López, Esq., and Rosario Vidal Arbona, Esq.,**
**on brief for Appellant.**
**Jesus E. Batista Sánchez, Esq., on brief for Appellees.**

---

**February 2, 2023**

---

**Panos, U.S. Bankruptcy Appellate Panel Judge.**

Asociación de Empleados del Estado Libre Asociado de Puerto Rico ("AEELA") appeals from: (1) the July 2020 order denying its motion to dismiss the chapter 13 case of the debtors, Angel Ruben Mojica Nieves ("Mr. Mojica") and Karen Melissa Navarro Pastor ("Ms. Navarro" and collectively with Mr. Mojica, the "Debtors"); (2) the October 2021 order denying its second motion for relief from the automatic stay; and (3) the October 2021 order confirming the Debtors' plan of reorganization.

At the center of this dispute is approximately $6,000 that Ms. Navarro maintained in an account with AEELA. Through protracted litigation, which included a motion to dismiss, repeated motions for relief from stay, multiple objections to confirmation, and serial motions for reconsideration, AEELA has sought to set off this amount, consisting of savings and dividends, to satisfy the balance of outstanding loans taken by Ms. Navarro and has asserted a statutory lien with respect to these savings and dividends. The bankruptcy court rejected AEELA's arguments at every turn, consistently reasoning that the Debtors were not in default as of the petition date and that their chapter 13 plan proposed to preserve AEELA's lien and satisfy the Debtors' contractual obligations to AEELA in accordance with the terms of AEELA's loan.

For the reasons set forth below, we **AFFIRM** the order denying the motion to dismiss and the order confirming the Debtors' chapter 13 plan of reorganization. The appeal of the order denying the motion for relief from stay is **DISMISSED** as **MOOT**.

**I.     The Parties**

AEELA "is a 'non-profit savings and loan association' established by Puerto Rico Law No. 133 of June 28, 1966."[2]  In re Velez Fonseca, 542 B.R. at 630 (citations omitted).  In English, AEELA is known as the "Commonwealth of Puerto Rico Government Employees Association," and one of its purposes is to make loans to Puerto Rico government employees.  In re Velez Fonseca, 534 B.R. at 268 (citations omitted).  All permanent government employees are required to be members of AEELA, and by statute, a 3% deduction is taken from their salary and placed into a savings and loan fund.  In re Velez Fonseca, 542 B.R. at 630 (citation omitted); see also P.R. Laws Ann. tit 3, § 9010.  AEELA's members can request loans against the balance of the savings and dividends under unique terms and conditions likely unavailable in the private credit markets.  Id.  The loans are secured by the member's "savings and contributions."  In re Velez Fonseca, 534 B.R. at 268 (discussing the Puerto Rico Commonwealth Employees Association Act).  "This lien arises solely by force of . . . statute and would therefore qualify as a statutory lien as defined by § 101(53) of the Bankruptcy Code."  Id.

---

[1]  References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise noted.

[2]  This statute was known as the "Puerto Rico Commonwealth Employees Association Act."  That statute was repealed by Act No. 9 of April 25, 2013, now codified as P.R. Laws Ann. tit. 3, §§ 9001-9052 (the "Commonwealth of Puerto Rico Employee Association Act of 2013" and hereinafter the "Employee Association Act").  See Velez Fonseca v. Gov't Emps. Ass'n (AEELA) (In re Velez Fonseca), 534 B.R. 261, 267 n.18 (Bankr. D.P.R. 2015) (citation omitted), aff'd, 542 B.R. 628 (B.A.P. 1st Cir. 2015).  In its brief, AEELA refers to the Employee Association Act as "AEELA's Law," a title which does not appear to be adopted by any other source but is retained in this opinion in text quoted from AEELA's submissions to avoid excessive alteration.

Ms. Navarro is an employee of the Department of Education's Food and Nutrition Services Program in Puerto Rico and, hence, a member of AEELA. Mr. Mojica is her spouse.[3]

## II.    Pre-Petition Events

In November 2017, Ms. Navarro received two loans from AEELA: (1) a "regular" $5,500.00 loan with a 7% interest rate, requiring $88.88 monthly payments; and (2) a $1,020.61 "disaster" or "emergency loan" (collectively, the "Loans").[4] According to AEELA, "the emergency loan is not amortized until the full payment of the regular loan." AEELA asserts, and the Debtors do not dispute, that when the loan proceeds were disbursed a statutory lien arose against Ms. Navarro's "savings and contributions" held by AEELA to secure repayment of the Loans.[5] The Debtors made scheduled payments in January, February, and March 2018.

## III.    The Bankruptcy Filing and Post-Petition Developments

On April 6, 2018, the Debtors filed a joint petition for chapter 13 relief. AEELA filed an amended proof of claim asserting a $6,378.97 claim secured by the Debtors' "savings" and "dividends." As the "basis for perfection" of its lien, AEELA cited various provisions of the Employee Association Act. The amended proof of claim did not assert that there was any

---

[3] In their submissions to the bankruptcy court and the Panel, the Debtors use the terms "Debtor" and "Debtors" interchangeably, thus blurring the distinction between Ms. Navarro and Mr. Mojica. For the sake of consistency, the term "Debtors" is used throughout this opinion, except when quoting the bankruptcy court, as the distinction does not affect the outcome of the appeal.

[4] We note that the relevant loan documents provided in the record are in the Spanish language. Because the parties do not dispute the essential terms of the loan obligations material to this decision, we do not require English translations to determine the issues raised in this appeal. See 48 U.S.C. § 864 (stating "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language"); 1st Cir. BAP L.R. 8011-1(b) ("The BAP will disregard any document(s) not in the English language unless a contemporaneous official, certified, or stipulated translation(s) is furnished."); see also Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) ("enforc[ing] the rule where the Spanish language document . . . is key to the outcome of the proceedings").

[5] In support of its asserted lien, in its appellate brief AEELA cites Section 5(a) of Act No. 9 of April 25, 2013, as well as In re Velez Fonseca, 542 B.R. at 640.

arrearage as of the petition date. It did, however, state the claim was subject to a right of setoff against the Debtors' "[s]avings and dividends." The Debtors did not object to the claim of AEELA.

### A. The Plan and AEELA's Objection to Plan Confirmation

In their third amended plan filed on October 1, 2018 (the "Plan"), the Debtors proposed to "maintain the current contractual installment payments on" AEELA's secured claim in the amount of $88.88 per month and identified AEELA's collateral as "Savings and Dividends." The length of the Plan was 60 months. The Plan reflected no existing arrearage owed to AEELA and did not propose to avoid any liens or to surrender any collateral.

AEELA filed its first objection to confirmation of the Plan on October 2, 2018. Citing In re Velez Fonseca and the Employee Association Act, AEELA again asserted that it was "a creditor with a statutory lien" on, among other things, "the savings and dividends that the Debtor[s] ha[d] deposited in AEELA." As the specific basis for its claimed statutory lien, AEELA cited "Section 5" of the Employee Association Act,[6] which provides:

> In the event an employee has an outstanding debt with the Association and any retirement system, the savings and contributions that such employee may have in each body shall be used, firstly, to meet any unpaid obligations incurred with the respective body.

See P.R. Laws Ann. tit. 3, § 9004(a). As grounds for its objection to confirmation, AEELA asserted: (1) the Plan did "not provide for the surrender of AEELA's collateral"; (2) the Debtors were attempting to avoid AEELA's statutory lien by proposing the continuation of payments under the Plan; and (3) the proposed payments would not pay AEELA's claim in full.

---

[6] "Section 5" is a reference to the Session Law, Act No. 9 of April 25, 2013, now codified as P.R. Laws Ann. tit. 3, § 9004(a). This opinion retains AEELA's references to the Session Law in text throughout, for consistency and in order to avoid excessive alteration. Formal citations, however, are to the current version of the statute.

5

At the confirmation hearing held on October 3, 2018, the bankruptcy court overruled AEELA's objection to confirmation, after concluding its "claim [w]as not adversely affected by the" Plan (the "October 2018 Order Overruling Objection"); however, the court did not confirm the Plan at the conclusion of that hearing. Instead, the bankruptcy court continued the matter without a date, to consider the pending objection to confirmation of the chapter 13 trustee (the "Trustee").

**B.      AEELA's Motions for Reconsideration of the October 2018 Order Overruling Objection**

AEELA moved for reconsideration of the October 2018 Order Overruling Objection, alleging it had not received any payments from Ms. Navarro since the petition date and reiterating that the Debtors' proposal to "keep paying AEELA's debt directly outside of bankruptcy" amounted to a modification of its "substantive rights." The Debtors opposed reconsideration. The bankruptcy court held another hearing on confirmation on February 27, 2019, again declined to confirm the Plan, and continued the matter without a date. The minutes of the hearing reflect that the bankruptcy court ordered the Debtors "to clarify, in writing, the treatment of AEELA's claim and lien within 21 days," and afforded the Trustee and AEELA 21 days to reply.

In their response, the Debtors repeated that the Plan did not "modify . . . AEELA's lien rights" and argued that AEELA's proposed treatment under the Plan complied with § 1325(a)(5)(B), insofar as the Plan provided: (1) for "lien retention"; (2) "for AEELA to receive the present value of its claim"; and (3) for "periodic payments." The Debtors characterized AEELA's motion for reconsideration as a "sixth bite at the proverbial apple," and asked the bankruptcy court to deny the motion.

6

On October 7, 2019, the bankruptcy court entered an order denying reconsideration of its October 2018 Order Overruling Objection (the "October 2019 Denial of Reconsideration"), reasoning:

> [I]n the present case, the court examined the Debtors' plan and its treatment [of] AEELA. The court determined that the proposed treatment did not affect any of AEELA's rights and the treatment was compliant [with] [§] 1325(a)(5). Accordingly, the court denied AEELA's objection to confirmation. The court's ruling did not contravene its previous ruling in [Ortiz Vega v. Asociación Empleados del Estado Libre Asociado de Puerto Rico (In re Ortiz Vega), 75 B.R. 858 (Bankr. D.P.R. 1987)], as argued by AEELA. The court ruled therein that AEELA's lien could not extend to future wages. However, the Debtors' intent to provide [for] AEELA's secured claim through periodic payments is a choice within the alternatives provided by the Bankruptcy Code.

Additionally, the court acknowledged that AEELA was asserting a right to offset the Debtors' obligation "with the accumulated shares and dividends," and noted that the proper procedure for asserting that right was to file a motion for relief from stay. After the bankruptcy court denied reconsideration, the Debtors requested another hearing on confirmation.

On October 21, 2019, AEELA filed a second motion for reconsideration (the "Second Motion for Reconsideration"), this time seeking reconsideration of the October 2019 Denial of Reconsideration, which the Debtors again opposed. Citing In re Miranda Soto, 667 F.2d 235 (1st Cir. 1981),[7] AEELA asserted it was prohibited from continuing payroll deductions once a member files for bankruptcy. Therefore, it contended it was unable to deduct loan payments from Ms. Navarro's payroll.

On March 9, 2020, the bankruptcy court entered an order denying the Second Motion for Reconsideration for the "same reasons" stated in its October 2019 Denial of Reconsideration.

---

[7] In In re Miranda Soto, the U.S. Court of Appeals for the First Circuit held that a debtor's pre-petition authorization of deductions from future wages in favor of AEELA was a dischargeable debt and did not constitute a lien against such wages. 667 F.2d at 238.

**C. AEELA's Motion to Dismiss**

On May 20, 2020, AEELA filed a motion to dismiss the case under § 1307(c)(1) (the "Motion to Dismiss"), essentially challenging the Debtors' refusal to surrender AEELA's collateral. AEELA continued to assert that it had a perfected "statutory lien over the accumulated savings and dividends that ar[o]se prior to the filing of bankruptcy and that statutory lien [was] senior to any other lien . . . ." AEELA extended this argument even further to assert that the Debtors had "no proprietary interest" in "their savings and dividends deposited in AEELA . . . ."

AEELA elaborated that the Debtors were 26 months in post-petition arrears because they failed to surrender their "savings and dividends" as required by the Employee Association Act and Velez Fonseca. AEELA further argued that the Debtors' failure to "comply[] with the law" had caused "unnecessary" and "unreasonable delay" which constituted "cause" for dismissal under § 1307(c).

The Debtors filed an opposition to the Motion to Dismiss, challenging the underlying premise that AEELA's statutory lien required the surrender of their savings and dividends. Moreover, the Debtors maintained that AEELA had raised the same argument previously and the court had rejected it more than 21 months earlier—on October 3, 2018—when it overruled AEELA's objection to confirmation.

**D. AEELA's Motion Seeking Authorization to Proceed Against Its Collateral**

Although the bankruptcy court conducted a confirmation hearing on June 17, 2020, it did not enter an order confirming the Plan and the matter was again continued without a date. A week later, AEELA filed a "Motion Requesting Order to Allow Creditor to Proceed Against Its Collateral, Which is Not Property of the Estate" ("Motion to Proceed Against Collateral").

8

Claiming a perfected interest in the Debtors' savings and dividends by virtue of a statutory lien, and further insisting that relief from stay was unnecessary to proceed against those savings and dividends, AEELA sought authorization to "proceed against" its collateral, citing § 105. The Debtors opposed the motion, contending the appropriate procedural mechanism was a motion for relief from the automatic stay.

### E.     Order Denying Motion to Dismiss and Motion to Proceed Against Collateral

On July 15, 2020, the bankruptcy court issued a single opinion and order denying both the Motion to Dismiss and the Motion to Proceed Against Collateral, noting that the basis for both motions was the same (the "Order Denying Dismissal"). The bankruptcy court concluded that the issues raised in the two motions were already decided in the October 2019 Denial of Reconsideration, declined to revisit that decision on claim preclusion grounds, and incorporated its October 2019 Denial of Reconsideration by reference. After emphasizing that there was "no issue as to the validity of AEELA's statutory lien" and that the lien remained unaffected by the terms of the Plan, the bankruptcy court directed the Debtors "to consign with the court . . . all post-petition payments owed to AEELA should AEELA refuse to accept them."

On July 26, 2020, AEELA moved for reconsideration of the Order Denying Dismissal and several months later filed its first motion for relief from the automatic stay. [8]

### F.     The November 17, 2020 Confirmation Hearing

At a hearing held on November 17, 2020, the bankruptcy court considered confirmation of the Plan, objections to confirmation, and AEELA's motion for reconsideration of the Order Denying Dismissal. AEELA argued that, under P.R. Laws Ann. tit. 3, § 862, the Debtors had no property interest in savings and dividends deposited with AEELA and yet they were attempting

---

[8] The parties subsequently requested that the court "set aside the hearing" on the motion for relief from stay as it was "substantially related" to the objection to confirmation.

to exercise control over those savings and dividends during the life of the Plan. AEELA continued to insist the Debtors were "changing" its lien. The hearing did not result in confirmation. Instead, the bankruptcy court ordered AEELA to brief several issues, including: (1) how "the filing of a bankruptcy petition trigger[ed] a loan default and/or a right to collect in full [from] the collateral, that is, the funds on deposit"; (2) how "the proposed chapter 13 plan alter[ed] the statutory lien held by AEELA"; and (3) "the statutory or legal support [for the] claim that AEELA may collect from collateral funds at any time, irrespective of whether the [debtor] is current or not[.]"

In its memorandum filed on January 19, 2021, AEELA explained that, pre-petition, it is the "recipient" of deductions made by government agencies that employ its members. Once AEELA receives notice of a member's bankruptcy filing, it immediately notifies the employer agency to cease the deductions as it asserts is required by In re Miranda Soto.

In support of its position that the filing of a bankruptcy petition triggers a loan default and a right to setoff against the Debtors' savings and dividends, AEELA pointed to its "Collection Regulations Manual R-011" which is authorized by Section 5(f) of the Employee Association Act.[9] In pertinent part, Article 12 of those Regulations provides:

> The Association may declare past due the totality of the debt and foreclose on or cancel any and all loan guarantees, including the savings and dividends in a member's account . . .
>
> . . . .
>
> (4) When a member files for protection under the Bankruptcy [Code] and the corresponding government entity is obligated to cease making deductions for payment of the loan.

---

[9] It does not appear that the Collection Regulations have been codified. In Spanish, the Regulations are known as: Asociación de Empleados del Estado Libre Asociado de Puerto Rico, Reglamento de Cobras R-011 (Dec. 2, 2016). Hereinafter, they are referred to as the "Collection Regulations."

In further support of its "right to collect in full from its collateral," AEELA pointed to Section 5 of the Employee Association Act, which provides that "the savings and contributions that such employee may have in each body shall be used, firstly, to meet any unpaid obligations incurred with the respective body." P.R. Laws Ann. tit. 3, § 9004(a).

As for its overarching theory that the Debtors were altering its statutory lien by refusing to surrender the savings and dividends on deposit, AEELA argued that the Debtors had no right to "control, dispose or dictate the fate of the savings and dividends . . . ." For this argument, AEELA cited Section 24 of the Employee Association Act, which states that members may not avail themselves of savings and dividends on deposit.

In their March 3, 2021 response, the Debtors reiterated that the Plan "propose[d] to continue to pay AEELA based upon the same terms and conditions as pre-existed the bankruptcy petition." (emphasis omitted). They asserted that the Plan complied with § 1325(a) and should be confirmed. In addition, the Debtors challenged AEELA's position that, pursuant to its regulations, a member's bankruptcy filing triggered a loan default entitling AEELA to possession of its collateral on two grounds. First, they maintained such a provision amounted to an unenforceable ipso facto clause. Second, they contended the provision violated the automatic stay. The Debtors also disputed AEELA's claim that they were attempting to modify AEELA's lien, arguing: "The Debtor[s] ha[ve] not requested, [are] not requesting and will not request transfer, tender, and/or any other form of control over the funds." (emphasis omitted).

Two days later, the Trustee filed a response, "adopting [the] Debtors' position." After acknowledging that AEELA did not accept its proposed treatment under the Plan and that the Debtors were not surrendering the subject collateral, the Trustee reasoned that the Plan was confirmable under § 1325(a)(5)(B):

11

The Plan provides for the retention of [AEELA's] lien until payment of the debt or discharge under [§] 1328. In light of this, the first requirement [of § 1325(a)(5)(B)] is fulfilled. Furthermore, the plan does provide that the total amount of the debt will be paid, directly by [the] Debtors in equal payments of $88.00. Said amount should be considered sufficient to provide adequate protection, given that it is the same amount of the monthly payments provided in the contract between Ms. Navarro and AEELA. The second and third requirements [under § 1325(a)(5)(B)], therefore, are also fulfilled.

Finally, the Trustee acknowledged that there were no pre-petition arrears on AEELA's claim and that the Debtors' post-petition payments were being consigned with the bankruptcy court.

### G.    Order Overruling AEELA's Objection to Confirmation

On August 4, 2021, the bankruptcy court issued an opinion overruling AEELA's objection to confirmation. The bankruptcy court recited the travel of the case, beginning with the observation that, as early as the October 3, 2018 hearing on confirmation, it had recognized that "AEELA's claim was not adversely affected in any way by the Chapter 13 plan . . . ." Ultimately, the bankruptcy court ruled:

The discussion is brief as the court's conclusion is the same as the one stated at the confirmation hearing held on October 3, 2018, that is, AEELA's claim is not adversely affected in any way by the Chapter 13 plan. The legal basis for the conclusion is found in the opinion and orders of October 7, 2019 (dkt. #70) and July 15, 2020 (dkt. #126).[10] The court fully agrees with the position expressed by the Chapter 13 trustee and the legal basis in the Debtors' memorandum. The facts of this case do not support the concerns expressed by AEELA.

The bankruptcy court appears to have implicitly denied AEELA's motion for reconsideration of the Order Denying Dismissal.[11] The same day, the bankruptcy court issued a notice scheduling a hearing on Plan confirmation for October 26, 2021.

---

[10] Docket No. 70 is the October 2019 Denial of Reconsideration. Docket No. 126 is the Order Denying Dismissal.

[11] Although no order was entered, the docket indicates the motion was "terminated" on August 4, 2021.

On August 18, 2021, AEELA filed a motion for reconsideration, which the bankruptcy court denied. AEELA then filed a second motion for reconsideration, which the bankruptcy court also denied.

## H.     AEELA's Second Stay Relief Motion

On September 24, 2021, AEELA filed another Motion for Relief from the Automatic Stay (the "Second Stay Relief Motion"). AEELA cited § 553 for the proposition that the enforcement of a right of setoff must be through a request for relief from the automatic stay. As its primary argument, AEELA asserted that, pursuant to § 362(d)(1), it was entitled to relief from stay for "cause" to enforce its setoff rights as mandated by applicable state law, namely, the Employee Association Act, arguing: "Courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of 'cause' for relief from the automatic stay under § 362(d)(1) . . . ." (citation omitted).

## I.     The October 19, 2021 Hearing and the Order Denying the Second Stay Relief Motion

During a hearing conducted on October 19, 2021, the bankruptcy court denied the Second Stay Relief Motion. In an order entered following the day (the "Order Denying Second Stay Relief Motion"), the bankruptcy court summarized the reasons for its refusal to grant stay relief:

> The court concludes that the First Circuit decision in Grella v. Salem Five Cent[ ] Savings [Bank], [4]2 F[.]3d 26 (1st Cir. 1994), serves as [a] basis to dispose of the present contested matter, AEELA's request for relief from stay, in two respects. First, a hearing on a motion for relief from stay is a summary proceeding of limited effect. . . . Second, issue preclusion bars relitigation of matters previously decided.
>
> AEELA, through the instant motion for relief from stay, renews the substantive allegations which this court has repeatedly rejected. A motion for relief from stay is not a substitute [for] an appeal. Therefore, the motion for relief from stay is hereby denied.

13

**J.      Confirmation and AEELA's Renewed Objection**

On October 19, 2021, a week before the confirmation hearing, AEELA renewed its objection to confirmation, "for the purpose of maintaining a clear record and to preserve [its] rights." Again, it asserted emphatically: "Nowhere in AEELA's Law and in its relationship with its members does a bankruptcy debtor become[ ] entitled to a right to retain the savings and dividends . . . post[-]discharge . . . ." AEELA argued the Plan was not confirmable under § 1325 because it had not consented to the Plan's proposed treatment of its claim, the Debtors were not voluntarily surrendering AEELA's collateral, and the Debtors were not paying AEELA's allowed secured claim in full as required under § 1325(a)(5)(B). It elaborated:

> AEELA's claim was filed in the amount of $6,349.22, which has not been objected to. A simple mathematic calculation denotes that $88.88 multiplied by 60 is $5,332.80, which is insufficient to cover AEELA's claim because it leaves an unpaid outstanding balance under the allowed claim in the amount of $1,016.42.

In addition, AEELA argued the Debtors could not be permitted to cure any default and maintain payments during the pendency of the chapter 13 case because it was undisputed that there were no arrears as of the petition date as required under § 1322(b)(5). Finally, AEELA claimed the Plan was not proposed in good faith because its contemplated treatment of AEELA's claim was "forbidden" by the Employee Association Act.

The Debtors urged the bankruptcy court not to consider AEELA's latest objection to confirmation, arguing the court had previously rejected the same arguments nine times.[12] Accordingly, the Debtors argued, the "[l]aw of the [c]ase . . . is . . . that the Plan does comply with Section 1325(a)(5)[.]" One week later, on October 26, 2021, the court entered an order

---

[12] The Debtors specifically pointed to the bankruptcy court's orders entered at docket numbers 41, 70, 89, 116, 126, 153, 199, 223, and 231.

confirming the Plan (the "Confirmation Order"), finding that "each of the requirements for confirmation of a Chapter 13 plan pursuant to . . . § 1325 [we]re met."[13]

These appeals followed. Pursuant to the terms of the Panel's order entered on December 15, 2021, the appeals were joined for briefing and argument and, now, for disposition.

## POSITIONS OF THE PARTIES IN THE APPEAL

I.   AEELA[14]

A.      The Confirmation Order

AEELA argues the court erred in concluding the Plan's proposed treatment of AEELA's claim did not affect AEELA's rights and statutory lien because there were no arrears as of the petition date. AEELA states: "[T]here will never be arrears . . . pre-petition because the statutory lien mandates that the funds be directly deducted by the employer." As in the proceedings below, AEELA insists that, to the extent the Plan permits the Debtors to "retain" the savings and dividends as to which AEELA asserts rights of setoff, the Plan's treatment of its claim amounts to a modification of AEELA's lien. This is so, it argues, because AEELA's regulations require "the member to surrender the savings or contributions . . . or agree to the setoff of the debt" upon the filing of a chapter 13 petition. AEELA further contends that none of the prongs of

---

[13] There is no transcript of the confirmation hearing in the record. The proceeding minutes reflect that the bankruptcy court overruled AEELA's objection to confirmation for the reasons stated in the Debtors' response to the objection and in the court's orders of October 7, 2019 (Docket No. 70), August 4, 2021 (Docket No. 199), and October 20, 2021 (Docket No. 238). Moreover, the bankruptcy court agreed with the Trustee's recommendation to confirm the Plan (Docket No. 238).

[14] At oral argument, in support of reversal of the challenged orders, AEELA asserted that the Debtors were five payments in arrears on their post-confirmation payment obligations. We dispatch this argument at the outset because it was not before the bankruptcy court. See Abdallah v. Bain Capital LLC, 752 F.3d 114, 120-21 (1st Cir. 2014) (stating arguments made "for the first time on appeal" are waived) (citation omitted). It appears from the record that any post-petition, pre-confirmation arrears resulting when AEELA declined to accept payment were addressed when the Debtors deposited those amounts with the court.

§ 1325(a)(5) were met because: (1) AEELA did not consent to the proposed treatment under the Plan; (2) the Debtors were not voluntarily surrendering the collateral to AEELA; and (3) the Debtors were not proposing to pay AEELA's allowed secured claim in full.

AEELA claims the Plan did not "contemplate the same contractual terms and conditions as existed pre-petition." (emphasis omitted). For instance, Ms. Navarro "obtained the regular loan in the amount of $5,500.00 with an annual interest [rate] of 7% and a monthly payment of $88.88, with an amortization of 77 months." AEELA asserts: "In the Plan, [the] Debtors propose to maintain the equal monthly payments in the amount of $88.88 for the pendency of the bankruptcy case, which is for a period of 60 months."

Additionally, AEELA maintains that the court confirmed the Plan in violation of In re Miranda Soto, 667 F.2d at 237, where, according to AEELA, the First Circuit established "AEELA's obligation to cease collecting post-petition payments." The Plan "proposes to maintain the post-petition salary deductions, as if the bankruptcy had never happened," AEELA argues.

### B.      The Order Denying Dismissal

As to the Order Denying Dismissal, AEELA argues there was cause to dismiss the case under § 1307(c)(1) for unreasonable delay as the case "lasted over 48 months without reaching confirmation." AEELA further contends that the Debtors persisted in litigating a "property interest not available to them under state law"—an effort which "blocked" distributions under the Plan and caused "undue delay" which was prejudicial to creditors.

Although listed in AEELA's notice of appeal, the July 2020 denial of the Motion to Proceed Against Collateral is not mentioned in AEELA's appellate brief; therefore, AEELA's appeal of that portion of the Order Denying Dismissal is waived. See Tower v. Leslie-Brown,

326 F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute waiver for purposes of appeal.") (citations omitted).

### C. The Order Denying the Second Stay Relief Motion

AEELA reiterates that by establishing a right of setoff, it established cause for relief from the automatic stay. AEELA further asserts that Article 12 of its Collection Regulations authorizes setoff when a member files for bankruptcy and has an outstanding debt, as in the instant case. As in the proceedings below, AEELA also cites Section 5 of the Employee Association Act to support its claimed right of setoff. AEELA maintains that the setoff requirements articulated in National Promoters & Services, Inc. v. Multinational Life Ins. Co. (In re National Promoters & Services Inc.), Adv. Pro. No. 13-0051 (ESL), 2020 WL 1685755, at *5-6 (Bankr. D.P.R. Apr. 6, 2020) are met here.

AEELA asks the Panel to reverse the Confirmation Order and lift the stay or, alternatively, to dismiss the bankruptcy case.

## II. The Debtors

### A. The Confirmation Order

The Debtors maintain the bankruptcy court properly confirmed the Plan. They challenge the notion that the Plan violates the Employee Association Act by permitting them to retain control and possession of their "savings and dividends." They counter: "[T]he savings and dividends are in the possession and control of AEELA." The Debtors further argue the bankruptcy court correctly ruled that the "inability to dispose of the savings and dividend[s]" did not "divest" them "from having an interest [i]n the same." Citing § 365(e)(1) and Century Bank at Broadway v. Peacock (In re Peacock), 87 B.R. 657, 659 (Bankr. D. Colo. 1988), among others, the Debtors also assert that Article 12 of the Collection Regulations is inapplicable as any

clause that declares default based solely on the event of insolvency or the filing of a bankruptcy petition constitutes an unenforceable ipso facto clause.

In further support of Plan confirmation, the Debtors argue that the Plan complies with § 1325(a)(5)(B), insofar as it provides for the Debtors to continue making payments to AEELA upon the same terms and conditions as existed pre-petition and for AEELA to retain its lien. In addition, the Debtors assert, because AEELA's claim is "a long-term debt[ ] as defined under [§] 1322(b)(5)," § 1328(a)(1) "specifically provides that AEELA's lien will be retained post-discharge . . . ."[15] The Debtors continue to argue, as they did in the proceedings before the bankruptcy court, that "(a) AEELA's claim will be paid as per the terms of its contract; and (b) AEELA's lien rights will remain unaltered." They reject the argument that they have not made payments in accordance with their agreement and assert that AEELA rejected their payments by unilaterally suspending the automatic debits from their account. Therefore, the Debtors further argue, the bankruptcy court correctly held that, if they are in post-petition arrears, it is due to AEELA's refusal to accept their payments.

The Debtors also challenge AEELA's argument that the Plan's proposed treatment of AEELA's claim violates In re Miranda Soto. Nothing in that case, they contend, states that a debtor may not *voluntarily* offer a continuance of wage deductions in order to satisfy a pre-petition wage obligation under a confirmed chapter 13 plan. Thus, the bankruptcy court correctly ruled in its Order Denying Dismissal that even though "post-petition future wages may not constitute" a lien, that did not necessarily mean salary deductions could not be made under the appropriate circumstances to provide a means "to direct post-petition payments."

---

[15] Although the Debtors used the specific term "long-term debt" for the first time on appeal, the Plan treated AEELA's claim as a long-term debt without reference to § 1328.

**B.      The Order Denying Dismissal**

The Debtors next challenge AEELA's appeal of the Order Denying Dismissal.  First, as a procedural matter, they maintain that AEELA failed to argue how the bankruptcy court committed clear error when it declined to dismiss the case based on two essential findings of fact: (1) the Plan does not challenge AEELA's lien; and (2) the Debtors are willing to continue to make payments to timely pay off their obligation to AEELA.  Second, as a substantive matter, the Debtors argue the premise underlying the Motion to Dismiss—namely, that the Debtors lacked any proprietary interest in the subject funds—lacked merit.

**C.      The Order Denying the Second Stay Relief Motion**

Finally, the Debtors assert a two-pronged argument that the bankruptcy court did not abuse its discretion in denying the Second Stay Relief Motion.  First, the Debtors maintain that AEELA possessed no right of setoff.  Section 5 of the Employee Association Act, the law upon which AEELA relies, has nothing to do with setoff once a debtor files for bankruptcy, the Debtors assert.  Instead, that provision grants AEELA a right to assert a claim against an employee who permanently separates from service for any reason.  Nor does Article 12 of the Collection Regulations provide AEELA with the right of setoff, the Debtors argue.  Even the case of In re Velez Fonseca does not grant AEELA a right of setoff, the Debtors contend, despite AEELA's assertion to the contrary.  According to the Debtors, in that case, the Panel held that Section 5 merely deals with AEELA's rights once an employee permanently separates from service.  Second, even assuming AEELA possessed a right of setoff, it failed to satisfy the required elements of § 553.

## APPELLATE JURISDICTION

Before addressing the merits of an appeal, we must determine whether we have jurisdiction, even if the question is not raised by the litigants.  Formatech, Inc. v. Sovereign Bank

19

(In re Formatech, Inc.), 483 B.R. 363, 367 (B.A.P. 1st Cir. 2012) (citation omitted).  The Panel has jurisdiction to hear appeals from final orders.  See 28 U.S.C. §§ 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020).  A bankruptcy court's order confirming a proposed chapter 13 plan is final for purposes of appeal.  Bullard v. Blue Hills Bank, 575 U.S. 496, 505 (2015); United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 269 (2010).

The bankruptcy court's order denying AEELA's Motion to Dismiss is, likewise, a final appealable order.  The Panel has previously recognized that, "[a]lthough orders denying motions to dismiss are generally interlocutory, such [orders are] final and appealable where a reorganization plan has already been confirmed, since the order effectively ends all litigation on the merits of dismissal."  Devila Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 505 (B.A.P. 1st Cir. 2005) (citing Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998)); cf. Sasso v. Boyajian (In re Sasso), 409 B.R. 251, 254 (B.A.P. 1st Cir. 2009) (holding an order denying debtors' motion to dismiss their chapter 13 case was a final order).  Other courts have similarly stated that "the denial of a dismissal motion becomes final for appeal no later than confirmation."  Jue v. Liu (In re Liu), 611 B.R. 864, 877 (B.A.P. 9th Cir. 2020) (citing Moen v. Hull (In re Hull), 251 B.R. 726 (B.A.P. 9th Cir. 2000)).  Here, the Order Denying Dismissal became final and appealable as of right upon the entry of the Confirmation Order on October 26, 2021.

In light of the foregoing, we conclude that we have jurisdiction to review the Confirmation Order and the Order Denying Dismissal.  Our jurisdictional assessment concerning the Order Denying Second Stay Relief Motion proceeds differently, however.  Because an order denying relief from stay is not presumptively final, see Pinpoint IT Servs., LLC v. Landrau Rivera (In re Atlas IT Exp. Corp.), 761 F.3d 177, 185 (1st Cir. 2014), we must determine

20

whether the Order Denying Second Stay Relief Motion is final under the circumstances presented by this record. The question is whether that order "definitively decided a discrete, fully-developed issue that is not reviewable somewhere else." Id. (citing Tringali v. Hathaway Mach. Co., 796 F.2d 553, 558 (1st Cir. 1986)). "If yes, the order is final; if no, it is not." Id. When evaluated against this standard, the Order Denying Second Stay Relief Motion satisfies the finality test. Indeed, pursuant to the Order Denying Second Stay Relief Motion, the bankruptcy court conclusively determined that AEELA was not entitled to a right of setoff and unequivocally expressed its intent not to revisit AEELA's substantive arguments. Finality, however, is "not the sole determinant" for establishing our jurisdiction. In re Formatech, Inc., 483 B.R. at 367. Mootness will also deprive us of jurisdiction when it becomes apparent that it is "impossible" for us "to grant any effectual relief whatever to the prevailing party[.]" Chafin v. Chafin, 568 U.S. 165, 172 (2013) (citation and internal quotation marks omitted). That is the case with the Order Denying Second Stay Relief Motion. Despite the finality of that order, our jurisdiction to review it is lost because the appeal has become moot. See Discussion, infra at p. 38.

## STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016) (citation omitted). The applicable standard of review for the Confirmation Order is de novo. See Viegelahn v. Essex, 452 B.R. 195, 199 (W.D. Tex. 2011) (stating the standard of review for confirmation orders is de novo); see also U.S. Bank Nat'l Ass'n v. Vertullo (In re Vertullo), 610 B.R. 399, 403 (B.A.P. 1st Cir. 2020); Hildebrand v. Thomas (In re Thomas), 395 B.R. 914, 917 (B.A.P. 6th Cir. 2008). The Order Denying Dismissal is reviewed for abuse of discretion. See Stevenson v. TND Homes I, LP (In re Stevenson), 583 B.R. 573,

21

579 (B.A.P. 1st Cir. 2018) ("[The Panel] review[s] a bankruptcy court's decision to dismiss a chapter 13 case for abuse of discretion.") (citing Witkowski v. Boyajian (In re Witkowski), 523 B.R. 300, 305 (BAP 1st Cir. 2014); Zizza v. Pappalardo (In re Zizza), 500 B.R. 288, 292 (BAP 1st Cir. 2013)); Simon v. Amir (In re Amir), 436 B.R. 1, 9 (B.A.P. 6th Cir. 2010) ("[R]ulings on motions to dismiss a bankruptcy case are reviewed for an abuse of discretion.") (citation omitted).

## DISCUSSION

### I.      The Confirmation Order

#### A.      Chapter 13 Plan Confirmation: Sections 1322 and 1325

Section 1325 provides that the court "shall confirm" a plan if it meets the requirements set out in that section. "Among other things, [§ 1325(a)(5)] states that with respect to each allowed secured claim provided for by the plan, the plan must satisfy one of three enumerated options: acceptance, cramdown, or surrender [of the collateral]." In re Tosi, 546 B.R. 487, 491 (Bankr. D. Mass. 2016). "If the creditor holding the allowed secured claim accepts the plan, nothing more is required." Assocs. Com. Corp. v. Rash (In re Rash), 90 F.3d 1036, 1041 (5th Cir. 1996), rev'd on other grounds, 520 U.S. 953 (1997), superseded on other grounds by statute, 11 U.S.C. § 506(a)(2). Under the surrender option, the debtor agrees "to cede his [or her] possessory rights in the collateral . . . [.]" In re Thompson, 581 B.R. 1, 4 (Bankr. D. Mass. 2018) (quoting Canning v. Beneficial Me., Inc. (In re Canning), 706 F.3d 64, 69 (1st Cir. 2013)). "Under the cram down option, the debtor is permitted to keep the property [securing the creditor's claim] over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral, see § 1325(a)(5)(B)(ii)." Rash, 520 U.S. at 957.

22

Section 1322 states that a chapter 13 plan "shall" include certain provisions and "may" include others, such as what is commonly referred to as the "cure and maintain" provision. See 11 U.S.C. § 1322(b)(5). At least one commentator views cure and maintain under § 1322(b)(5) as providing a separate option to obtain confirmation of a Chapter 13 plan as it relates to secured claims. "If the debtor does not want to surrender all of the collateral and if payment of the allowed secured claim after valuation and modification is not attractive, the debtor might consider curing or waiving defaults under § 1322(b)(3)" or, "[i]f the secured claim is a long[-]term debt, the debtor can cure defaults and maintain payments under § 1322(b)(5)." Keith M. Lundin, Lundin On Chapter 13, § 78.4, at ¶1, LundinOnChapter13.com (last visited Jan. 25, 2023) (footnotes omitted). Under the latter section, "the plan *may* . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" 11 U.S.C. § 1322(b)(5) (emphasis added); see also 3 Hon. Joan N. Feeney (Ret.) et al., Bankruptcy Law Manual § 13:26 (5th ed. 2022-2) ("Chapter 13 assists the debtor by providing in § 1322(b)(5) that the plan may cure a default within a reasonable time on any claim that is due beyond the term of the plan and maintain the payments on the long-term debt as they come due."); Hon. Michael B. Kaplan et al., Consumer Bankruptcy Manual § 5:50 (2d ed. Nov. 2022 update) (listing right to cure under § 1322(b)(5) among the Bankruptcy Code's "permissive provisions"). Courts have recognized this option as well. See, e.g., Sapos v. Provident Inst. of Sav. in the Town of Bos., 967 F.2d 918, 922 (3d Cir. 1992) (stating the "cure-and-maintain option" of § 1322(b)(5) "gives the debtor an alternative to cramming down the creditor's claim and paying it off within the chapter 13 plan") (citations omitted); Paventy v. USDA Rural Hous. Serv. (In re Paventy), BAP No. EC-21-1159-SLB, 2022 WL 16545514, at *10 (B.A.P. 9th Cir. Oct. 28, 2022) (stating "§ 1322(b)(5) authorizes debtors to

23

propose plans that 'provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due'"); In re Lewis, No. 11-13987 (JLG), 2017 WL 1839165, at *1 n.3 (Bankr. S.D.N.Y. May 5, 2017) (describing the right to cure and maintain under § 1322(b)(5) as an alternative to cram down, citing Sapos); Bankowski v. Wells Fargo Bank, N.A. (In re Reid), 480 B.R. 436, 439 (Bankr. D. Mass. 2012) (recognizing the "'cure and maintain' option" under § 1322(b)(5)); In re Hill, 96 B.R. 809, 814 (Bankr. S.D. Ohio 1989) ("Treatment of a secured claim arising from a long-term debt under § 1322(b)(5) is but one permissible option afforded a Chapter 13 debtor.").

Addressing the view that the permissive provisions of § 1322(b)(5) may be inconsistent with some interpretations of § 1325(a)(5), Keith Lundin explains:

> Though there is no cross-reference in § 1325(a)(5) to § 1322(b)(5), it is reasonable that a secured claim holder can be satisfied at confirmation by compliance with § 1322(b)(5) *without also being entitled to satisfaction in one of the three ways provided in § 1325(a)(5)*. That is, if the debtor cures defaults and maintains contract payments with respect to a long-term allowed secured claim, the debtor need not also pay the present value of the allowed secured claim during the life of the plan. Some courts have harmonized §§ 1325(a)(5) and 1322(b)(5) by finding that long-term treatment under § 1322(b)(5) is a form of present value for purposes of § 1325(a)(5)(B). This logic breaks down if the contract rate of interest is less than the rate necessary to provide present value for purposes of § 1325(a)(5)(B)(ii). It is probably true that Congress just overlooked the need for a cross-reference to § 1322(b)(5) in the list of ways to satisfy an allowed secured claim holder in § 1325(a)(5). The two sections are accommodated by holding that if the debtor desires to keep property that secures a long-term debt and provides that any arrearage will be cured within a reasonable time and future payments maintained during the plan, the claim holder is not also entitled to payment in full during the plan under § 1325(a)(5)(B) or to surrender under § 1325(a)(5)(C).

Lundin, supra § 78.4, at ¶18 (emphasis added) (footnotes omitted).

The Supreme Court has considered the interplay between § 1325(a)(5) and § 1322(b)(5) in another context. See Rake v. Wade, 508 U.S. 464 (1993), superseded on other grounds by statute, 11 U.S.C. § 1322(e). In Rake v. Wade, the Supreme Court held that § 1325(a)(5)(B)(ii)

24

applied to a cure and maintain plan proposed under § 1322(b)(5) so as to require the payment of interest with respect to the "cure" portion of a mortgage lender's claim to provide the secured creditor with the present value of its secured claim. See id. at 473-75. The result was later abrogated by an amendment to the Bankruptcy Code with the enactment of § 1322(e), leaving courts to consider the persuasive value of the Supreme Court's dicta regarding the application of § 1325(a)(5) to cure and maintain plans. See, e.g., In re Materne, 640 B.R. 781, 798-803 (Bankr. D. Mass. 2022) (discussing Rake v. Wade and collecting cases considering the applicability of the equal payment provision of § 1325(a)(5)(B)(iii) to a cure and maintain plan); see also Collier on Bankruptcy ¶ 1325.06[1][a] (Richard Levin & Henry Sommer eds., 16th ed.) (discussing Rake v. Wade, its abrogation, and its subsequent effect on the interplay between § 1325(a)(5) and § 1322(b)(5), stating "[b]ecause Congress did not amend section 1325(a)(5), it is unclear whether the reasoning of Rake continues to be good law in other circumstances in which it might be applicable").

### 1. Majority View

An interpretation that the debtor who proposes to cure and maintain under § 1322(b)(5) need not satisfy § 1325(a)(5)(B) or § 1325(a)(5)(C) appears to be consistent with the majority of courts that have held that the rights provided for in those provisions are "mutually exclusive." In re Parks, No. 12-13045 MS, 2012 WL 6061670, at *3 n.1 (Bankr. D.N.J. Dec. 6, 2012) (citing In re Hussain, 250 B.R. 502, 507 & 510-11 (Bankr. D.N.J. 2000)); see also In re Sanchez, 137 B.R. 214, 216 (Bankr. E.D. Tex. 1992) ("In the view of the majority position, the concept of a section 1322(b)(5) cure and the concept of a section 1325(a)(5)(B) cram down are mutually exclusive.") (citing Shearson Lehman Mortg. Corp. v. Laguna (In re Laguna), 944 F.2d 542 (9th Cir. 1991); Landmark Fin. Servs. v. Hall, 918 F.2d 1150 (4th Cir. 1990); In re Capps,

25

836 F.2d 773 (3d Cir. 1987); Foster Mortg. Corp. v. Terry (In re Terry), 780 F.2d 894 (11th Cir. 1985)).  As one court succinctly stated, "'the curing of defaults pursuant to section 1322(b)(5) is a right conceptually distinct from chapter 13 cramdown . . . .'"  Cole v. Cenlar Fed. Sav. Bank (In re Cole), 122 B.R. 943, 950 (Bankr. E.D. Pa. 1991) (citations omitted).  The distinction is between "leav[ing] the contract intact (maintain and cure)" and "alter[ing] the terms and pay[ing] the present value of the secured claim (cram-down)."  In re Hayes, 111 B.R. 924, 926 (Bankr. D. Or. 1990).

The U.S. Court of Appeals for the Third Circuit distinguished the relevant Bankruptcy Code sections as follows:

> [T]he present value test of section 1325(a)(5) . . . is [not] applicable where a default is cured pursuant to section 1322(b)(5).  The present value test[] compensate[s] creditors whose rights have been modified by reductions in payments, interest charges or the total amount due; where a default is cured, however, the creditor's rights are not modified.  Since the contract terms remain in force . . . the time value of money is irrelevant.  The creditor receives the interest, charges and costs to which it is entitled under the contract and applicable nonbankruptcy law.

In re Capps, 836 F.2d at 776 (quoting 5 Collier on Bankruptcy ¶ 1322.09[4] (15th ed. 1986)).

### 2. Minority View

A number of courts have attempted to harmonize § 1325(a)(5) and § 1322(b)(5) rather than treat them as conceptually distinct.  For instance, in Homeowners Funding Co. v. Skinner, 129 B.R. 60, 64 (E.D.N.C. 1991), the court acknowledged that § 1325(a)(5) can be satisfied in a chapter 13 case when a debtor proposes to bifurcate a home mortgage, cure arrearages, and maintain payments during the life of the plan and beyond.  That court stated, first, that the cram down provision of § 1325(a) was "irrelevant" because neither the bifurcation of the debt nor the curing of the default constituted a modification of the secured debt.  Id.  But the Skinner court went on further to state:

26

> [E]ven if [§] 1325(a)(5) is deemed applicable, the requirements of [§] 1325(a)(5)(B) have been met. The payments provided for in the Bankruptcy Court's order meet the present value test of [§] 1325(a)(5)(B)(ii). The debtors' allowed secured claim is $15,500.00. Said order sets the principal amount of Appellant's allowable secured claim at $15,500.00. The claim is to be paid by payments of $144.00 per month for 24 months through the Plan to cure the default and payments of $372.06 per month outside the Plan. The order requires that the principal accrue interest at the contract rate of 14.6%, that the payments be applied first to interest and then to principal, and that payments of $372.06 continue until the principal and accrued interest are paid. The order also provides for extinguishment of the lien only upon satisfaction of the debt, and thus the requirement of [§] 1325(a)(5)(B)(i) has been met. Since 14.6% per annum is a more than adequate discount rate, the present value of these payments mandated by the confirmation order equals the amount of the allowed secured claim as mandated by [§] 1325(a)(5)(B)(ii).

Id. at 64-65 (footnote omitted).

In In re Gordon, 217 B.R. 973, 975 (Bankr. S.D. Ga. 1997), the court specifically held that § 1322(b)(5) "permits cure and maintenance on '*any* unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.'" (quoting 11 U.S.C. § 1322(b)(5)). There, the court considered a chapter 13 plan that proposed to extend the treatment of the IRS's secured claim beyond the five-year maximum. In rejecting the IRS's argument that, under § 1325(a)(5), its claim was required to be paid in full within five years, the court "harmonized" §§ 1325(a)(5) and 1322(b)(5) as follows:

> Section 1325(a)(5) . . . requires that a plan . . . permit the creditor to retain the lien (which this plan provides) and distribute property to the secured creditor of a value which is not less than the allowed amount of the claim. Debtor's plan accomplishes this. Clearly it does not distribute value *in cash* to the holder of the claim. It does distribute periodic payments to maintain debt service on this obligation to the Internal Revenue Service for the life of the plan. The remaining balance owed the United States is excepted from discharge pursuant to . . . § 1328(a)(1). The total value distributed to the Service, therefore, is the cash reduction in the principal balance which was owed on the date of filing and a nondischargeable unpaid balance. Combining these two value components meets the requirements of § 1325(a)(5).

Id. at 976 (footnote omitted) (citation omitted). While the Gordon court acknowledged the awkwardness of this construction, it simultaneously observed that "[p]ayment of long[-]term

27

debts under § 1322(b)(5) is 'specifically sanctioned by the Code.'" Id. (quoting In re Alexander, No. 97-20394, slip op. at 8 n.6 (Bankr. S.D. Ga. Nov. 20, 1997)).

## B.      Section 1322(b)(5), Generally

Courts interpret § 1322(b)(5) to require "the same principal and interest payments as provided in the note, *within the time frame specified in the note*." JPMorgan Chase Bank, Nat'l Ass'n v. Galaske, 476 B.R. 405, 411 (D. Vt. 2012) (emphasis added) (citation and internal quotation marks omitted). "Although the most common use of § 1322(b)(5) has been to cure mortgage or student loan defaults, the language of the statute is by no means restricted to such debts." In re Delauder, 189 B.R. 639, 644 (Bankr. E.D. Va. 1995) (footnote omitted); see also 7 Norton Bankr. L. & Prac. 3d § 149:10 (Jan. 2023 Update) ("Although most issues under . . . § 1322(b)(5) arise in regard to secured claims, its provisions equally permit curing a default and maintenance of payments on any 'unsecured claim . . . on which the last payment is due after the date on which the final payment under the plan is due.'"). "[A] debt provided for under § 1322(b)(5) is not discharged under § 1328(a)(1)[.]" Jones v. Branch Banking & Tr. Co., No. 5:09-CV-419-FL, 2010 WL 11546121, at *2 (E.D.N.C. Feb. 9, 2010) (citation omitted).

> The Debtor may . . . take advantage of [§] 1322(b)(5) by keeping the same . . . contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There would then be "maintenance of payments." And those payments would be maintained on the "secured claim" as that claim is computed in accordance with [§] 506(a). The three to five year limitation on plan payments of [§] 1322(c) would then have no application because [§] 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."

In re McGregor, 172 B.R. 718, 721 (Bankr. D. Mass. 1994).

## C. Section 1322(b)(5) Requires Neither a Default Nor a Cure

AEELA argued below that the Debtors were not entitled to the cure and maintain option where there was no default at the time of the filing of the petition.[16] However, courts have ruled that § 1322(b)(5)'s provision for the maintenance of payments on a long-term debt applies even where no default exists at the time of the petition. See, e.g., Jones, 2010 WL 11546121, at *3; In re Delauder, 189 B.R. at 644. As the Delauder court stated:

> [N]otwithstanding the reference in § 1322(b)(5) to the "curing of any default," nothing in the statutory language suggests that the provision is restricted to circumstances where there is an existing default, and the court concludes that the provision permits the "maintenance of payments while the case is pending" on any debt where the final payment is due after the last payment under the plan even in the absence of default.

189 B.R. at 644. The Jones court, embracing Delauder's view, further reasoned:

> There is . . . no principled basis for preventing a debtor from taking advantage of maintaining payments on a long-term debt under § 1322(b)(5) merely because the debtor has not defaulted, because the original agreement can be given effect without resort to a cure. A debtor should not be penalized for failing to default.

Jones, 2010 WL 11546121, at *3. Another bankruptcy court similarly stated: "Nothing about the permissive nature of § 1322(b)(5) suggests that a cure must take place in order for § 1322(b)(5) to apply." In re Hunt, No. 14-02212-5-DMW, 2015 WL 128048, at *3 (Bankr. E.D.N.C. Jan. 7, 2015) (citing In re Chappell, 984 F.2d 775, 781 (7th Cir. 1993)); see also In re Tollios, 491 B.R. 886, 890 (Bankr. N.D. Ill. 2013) (stating § 1322(b)(5) "permits the continuation of monthly payments on 'any' long-term debt, not just long-term debt on which debtors owe pre-petition arrears"); Cloud v. CitiFinancial Inc. (In re Cloud), No. 09-60299, 2013 WL 441543, at *2 (Bankr. S.D. Ga. Jan. 31, 2013) ("[T]here is no statutory basis on which to infer an exclusion [from § 1322(b)(5)] of long-term debts that are current as of the date of the petition.").

---

[16] AEELA failed to preserve that argument on appeal by not briefing it. We address it here, nonetheless, for the sake of completeness.

Here, the record establishes that AEELA's claim qualifies as a "long-term debt" within the meaning of § 1322(b)(5) insofar as "the last payment" required under the Loans "is due after the date on which the final payment under the [P]lan is due[.]" 11 U.S.C. § 1322(b)(5). As discussed further below, contrary to AEELA's assertion that the Plan proposes to vary the parties' original contract terms by "maintain[ing] the equal monthly payments" due under the Loans only "for the pendency of the bankruptcy case," the Plan contemplates that the regular loan will be satisfied consistent with original terms of the Loans and after the Plan period. It is undisputed that the loan period in the original documents is 77 months and that the final payments for both Loans will come due after the final Plan payment is due.

### D.    The Confirmation Standards Applied

AEELA challenges the Plan within the framework of § 1325(a)(5), arguing that the Plan does not satisfy any of the three options outlined in that section—that is, it fails to provide for surrender of the collateral, does not pay AEELA's claim in full, and AEELA has not consented to the Plan. Below and on appeal, the Debtors have countered that the Plan complies with § 1325(a)(5) by providing for lien retention, maintenance of the original contractual payments, and payment in full in accordance with the loan terms. More recently, on appeal, the Debtors have invoked § 1322(b)(5). The bankruptcy court confirmed the Plan and stated in its Confirmation Order that "each of the requirements for confirmation of a chapter 13 plan pursuant to . . . § 1325(a) [we]re met." Similarly, in its October 2019 Denial of Reconsideration (of its October 2018 order denying confirmation), the court concluded the Plan was "compliant with § 1325(a)(5)." The court did not reference § 1322(b)(5) or discuss how the treatment of AEELA's secured claim complied with § 1325(a)(5).

Ultimately, *why* the court held that the Plan complied with § 1325(a)(5) is not critical to disposition of this appeal. The record demonstrates that the Plan treats AEELA's secured claim

30

by maintaining contractual payments for the remaining term of the debt, the final payment of which is due after the Plan term, as permitted by § 1322(b)(5). We may affirm on any basis supported by the record. See Peguero-Moronta v. Santiago, 464 F.3d 29, 34 (1st Cir. 2006) ("We can affirm on any basis available in the record because '[w]e are not wedded to the lower court's rationale, but, rather, may affirm its order on any independent ground made manifest by the record.'") (citation omitted); Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.), 496 B.R. 644, 657 (B.A.P. 1st Cir. 2013) ("We may affirm the decision of the bankruptcy court on 'any independently sufficient grounds made manifest by the record' as it existed before the bankruptcy court.") (citations omitted); see also United States v. Swan, 675 F. App'x 876, 880 (11th Cir. 2017) (stating "remand is unnecessary where the record on appeal sufficiently enables meaningful review") (citation omitted)

As required by P.R. LBR 3015-3(b), the Plan is in the form prescribed by Chapter 13 Plan Local Form G ("LBF-G"). Part 3 of the Plan provides for "Treatment of Secured Claims," and Part 3.1 provides for "Maintenance of payments and cure of default, if any." AEELA's claim is treated in Part 3.1 and provides for payments of $88.88 per month to be disbursed by the Debtors and that the Debtors "will maintain the current contractual installment payments." While the form plan does not specifically reference § 1322(b)(5), it is clear that treatment of a secured claim under Part 3 of the form plan is intended to comply with that section. Notably, where a debt is "provided for" under § 1322(b)(5) in a plan, the debtor is not discharged from that debt at the end of the plan term. 11 U.S.C. § 1328(a)(1).[17] The Plan does not impermissibly

---

[17] It is understandable why a secured creditor might want some confirmation on the record that treatment under Part 3.1 of the District of Puerto Rico's LBF-G is treatment under § 1322(b)(5). However, the Plan terms and the submissions by the Debtors prior to confirmation make clear enough that the debt for the Loans would not be discharged and would continue to be paid after the Plan term as a result of the treatment under § 1322(b)(5).

modify the monthly payment or any other contract terms.  Consistent with § 1322(b)(5), the Plan provides for the maintenance of $88.88 monthly payments, which the parties agree is the monthly payment amount under the contract.  AEELA has not challenged the Debtors' characterization of its claim as a "long-term" debt having a final payment that is due after the Plan term.  The Plan also provides for retention of AEELA's lien.  We agree with those courts that have ruled that debtors may treat long-term debt claims under § 1322(b)(5) even in the absence of the need to cure a pre-petition default.  See, e.g., In re Delauder, 189 B.R. at 644.  We are unpersuaded by AEELA's argument that the Plan modifies either its lien or the original terms of the Loans.  For the reasons discussed below, treatment of the claim of AEELA in a manner authorized by § 1322(b)(5) is permissible even where that treatment limits remedies purporting to arise upon the filing of a bankruptcy petition.[18]

We conclude that the Plan appropriately "provide[s] for" AEELA's claim under § 1322(b)(5), and we **AFFIRM** the Confirmation Order on the basis that either § 1322(b)(5), itself, permits confirmation, or that § 1325(a)(5)(B)(ii) must be read such that the present value of the amounts provided to be distributed under the Plan including the payments extending beyond the Plan term is not less than the amount of AEELA's allowed secured claim.  "A statute should be construed, if possible, in a manner which brings all of its provisions into harmony."  In re Nadler, 122 B.R. 162, 166 (Bankr. D. Mass. 1990) (citations omitted).  We do not need to

---

[18] Whether the regulations promulgated by AEELA that permit AEELA to "declare past due the totality of the debt and foreclose on or cancel any and all loan guarantees, including the savings and dividends in a member's account" when a member files for bankruptcy protection are subject to ipso facto provisions of the Bankruptcy Code is not before us because AEELA will be bound by a confirmation order that provides for contractual maintenance payments to satisfy its claim. Cf. Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24, 26 (2d Cir. 1982) (observing "the power to cure [and maintain] must comprehend the power to 'de-accelerate,'" adding "[t]his follows from the concept of 'curing a default'").

resolve the question of whether § 1325(a)(5) and § 1322(b)(5) are mutually exclusive or must be harmonized. Courts may have different views on that question, and it may be that the bankruptcy court in this case viewed the Plan as satisfying § 1325(a)(5) in addition to or by operation of § 1322(b)(5) without hashing out the interplay of those sections. We recognize that the provisions of § 1322(b) for proposing a confirmable plan are "permissive," and debtors routinely rely on these provisions. See 7 Norton Bankr. L. & Prac. 3d § 149:6 (Jan. 2023 Update) (regarding permissive nature of § 1322(b)); In re Hill, 96 B.R. 809, 814 (Bankr. S.D. Ohio 1989) (also discussing permissive nature of § 1322(b)). While the statute could be clearer on this issue, and it may be that Congress missed a cross-reference, it is abundantly clear that Congress intended § 1322(b)(5) to permit debtors to include in chapter 13 plans provisions to "maintain" contractual payments to holders of claims where the term of a loan extends beyond the plan period. Adopting AEELA's interpretation of § 1325(a)(5) would invalidate "cure and maintain" plans routinely confirmed by bankruptcy courts addressing home mortgage claims and would directly contradict the will of Congress clearly expressed in § 1322(b)(5).

Nothing in either the Employee Association Act or AEELA's Collection Regulations alters our analysis. Upon the filing of the Debtors' bankruptcy case, to the extent they conflict, those statutes and regulations were preempted by the provisions of the Bankruptcy Code, including § 1322(b). See Note Holders v. Large Priv. Beneficial Owners (In re Trib. Co. Fraudulent Conv. Litig.), 946 F.3d 66, 82 (2d Cir. 2019) ("Once a party enters bankruptcy, the Bankruptcy Code constitutes a wholesale preemption of state laws regarding creditors' rights) (citations omitted); Miles v. Okun (In re Miles), 430 F.3d 1083, 1091 (9th Cir. 2005) ("Congress intended the Bankruptcy Code to create a whole scheme under federal control that would adjust *all* of the rights and duties of creditors and debtors alike . . . .") (citation omitted); E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117, 120 (2d Cir. 2001) ("The United States

Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights.") (citation omitted).

## II.     The Order Denying Dismissal

### A.     The § 1307(c)(1) Standard Governing Dismissal

"Section 1307 governs dismissal of a chapter 13 case." Benoit v. Deutsche Bank Nat'l Tr. Co. (In re Benoit), 564 B.R. 799, 805 (B.A.P. 1st Cir. 2017) (quoting In re Baril, No. 09-20112, 2015 WL 1636442, at *2 (Bankr. D. Me. Apr. 10, 2015)). "Section 1307(c) provides that, 'on request of a party in interest or the United States trustee and after notice and a hearing,' the court, for cause, may dismiss a case under chapter 13 or convert the case to chapter 7, 'whichever is in the best interests of creditors and the estate.'" In re Acevedo, No. 12-12393-JNF, 2014 WL 1664255, at *3 (Bankr. D. Mass. Apr. 24, 2014) (quoting 11 U.S.C. § 1307(c)). "The three princip[al] requirements of dismissal under § 1307 are: (1) the request of a party in interest or the United States Trustee, (2) notice and a hearing, and (3) a showing of cause." Minkes v. LaBarge (In re Minkes), 237 B.R. 476, 478 (B.A.P. 8th Cir. 1999) (footnotes omitted). "The moving party under [ ] § 1307(c) bears the burden of proof." In re Zizza, 500 B.R. at 292 (citation and internal quotation marks omitted). Dismissal under § 1307(c) is committed to the bankruptcy court's discretion. See In re Benoit, 564 B.R. at 805 (citing Howard v. Lexington Invs., Inc., 284 F.3d 320, 322 (1st Cir. 2002)).

Because the first two requirements for dismissal under § 1307(c) are not at issue here, our focus is on the third element: whether there was "cause" for dismissal and whether the bankruptcy court abused its discretion in denying the Motion to Dismiss. "Cause for dismissal is not specifically defined in [§] 1307, but subsection (c) sets forth [a] non-exclusive list of eleven examples of cause." In re Acevedo, 2014 WL 1664255, at *3 (citing 11 U.S.C. § 1307(c)) (other citation omitted); see also Marrama v. Citizens Bank of Mass., 549 U.S. 365, 373 (2007)

34

(stating § 1307(c) "includes a nonexclusive list of . . . causes justifying" dismissal or conversion of a chapter 13 proceeding).  One of those is "unreasonable delay by the debtor that is prejudicial to creditors"—the reason cited by AEELA as cause for dismissal of the Debtors' case.  See 11 U.S.C. § 1307(c)(1).

When "evaluating whether there has been unreasonable delay [by the debtor] which is prejudicial to creditors, the court must consider whether the debtor has engaged in some form of unreasonable delay, and whether the delay has been prejudicial."  Zareas v. Bared Espinosa (In re Bared Espinosa), Adv. Pro. No. 04-0298, 2006 WL 3898379, at *4 (Bankr. D.P.R. Jan. 27, 2006) (discussing cause for dismissal under analogous § 1112(b)(1)); see also Penland v. Rakozy (In re Penland), BAP No. ID-05-1467-HKMa, 2006 WL 6811002, at *4 (B.A.P. 9th Cir. Aug. 17, 2006) ("To support cause for dismissal, § 1307(c)(1) requires the bankruptcy court to find that a debtor was a proponent of unreasonable delay that resulted in prejudice to creditors.") (citation omitted).  The First Circuit has explained that dismissal under § 1307(c)(1) is appropriate where "a further delay [by the debtor] would only prejudice creditors and ma[k]e the feasibility of any plan unlikely."  Howard, 284 F.3d at 323 (affirming dismissal where debtor failed to file her tax returns within the time allotted by the court) (citation omitted).

## B.    The § 1307(c)(1) Dismissal Standard Applied

AEELA relies exclusively on Velez Fonseca as support for the proposition that the Debtors were required to surrender the subject savings and dividends to AEELA and that their failure to do so caused "unnecessary" and "unreasonable" delay in the case.  This reliance, however, is misplaced.  To be sure, in dicta, the Velez Fonseca court stated that AEELA had a valid statutory lien securing the loans provided to its employees and that AEELA was "allowed to proceed against the collateral to collect on its claim"; but the ability of AEELA to proceed against its collateral was not at issue in that case.  See Velez Fonseca, 534 B.R. at 271.  The true

35

issue in Velez Fonseca was whether AEELA had violated the discharge injunction in its communications to the debtor after his retirement. See id. The bankruptcy court never examined whether the debtor in that case was required to surrender savings and dividends to AEELA. Nothing in Velez Fonseca supports a conclusion that the Debtors lacked a property interest in the savings and dividends on deposit with AEELA and, therefore, were required to surrender those savings and dividends. Thus, AEELA's argument that the Debtors caused "undue delay" by litigating an interest in the savings and dividends rather than surrendering them is unavailing.

If anything caused delay in the underlying bankruptcy case, it was AEELA's persistence in continuing to litigate the same theory long after it was initially rejected by the court in the October 2019 Denial of Reconsideration (of its 2018 order overruling AEELA's objection to confirmation). By the time AEELA filed the Motion to Dismiss in May of 2020, it had already pressed the same claims by objecting to confirmation and, when that objection was overruled, filing two successive motions for reconsideration. Serial requests for reconsideration, by their very nature, raise the specter of impropriety. See Harris v. HSBC Bank USA, Nat'l Ass'n (In re Harris), 450 B.R. 324, 336 (Bankr. D. Mass. 2011) (stating "serial requests for reconsideration are improper"). Accordingly, the record reflects that AEELA did not satisfy its burden under § 1307(c)(1) of establishing that the Debtors engaged in some form of delay and that the delay was prejudicial to creditors. See In re Bared Espinosa, 2006 WL 3898379, at *4.

Additionally, we are unpersuaded by AEELA's reliance on In re Miranda Soto for the assertion that AEELA is prohibited from making any post-petition deductions from a debtor's wages whatsoever. We agree with the bankruptcy court's conclusion that nothing in that case prevents a debtor from voluntarily offering a continuation of wage deductions in order to satisfy a pre-petition obligation under a confirmed chapter 13 plan.

Therefore, the Order Denying Dismissal is **AFFIRMED**.

**III.    The Order Denying the Second Stay Relief Motion**

As we noted above, AEELA also appeals the Order Denying Second Stay Relief Motion. The Second Stay Relief Motion was yet another vehicle for AEELA to challenge the Debtors' refusal to surrender the subject savings and dividends.

**A.    The Standard Governing Stay Relief**

Subject to certain exceptions not applicable here, § 362(a)(1) provides that the filing of a bankruptcy petition stays the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1). Section 362(a)(7) provides a stay of any action by a creditor to set off any debt owing to the debtor that arose before the commencement of the case against any claim against the debtor. See 11 U.S.C. § 362(a)(7). "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). "The Bankruptcy Code does not define 'cause' for purposes of . . . § 362(d)(1), requiring courts to determine cause on a case-by-case basis." In re Podmostka, 527 B.R. 51, 54 (Bankr. D. Mass. 2015).

"[T]he First Circuit has instructed that the test for determining standing to bring a motion for stay relief is 'whether a creditor has a colorable claim to property of the estate.'" In re Harris, No. 17-31042-CJP, 2018 WL 6729689, at *5 (Bankr. D. Mass. Dec. 21, 2018) (quoting Grella, 42 F.3d at 32). "To obtain relief from the stay, a movant is required to 'show cause for relief, in addition to its colorable claim on property of the estate.'" Id. (quoting United States v. Fleet Bank of Mass. (In re Calore Express Co.), 288 F.3d 22, 36 (1st Cir. 2002)).

**B.      The Effect of the Confirmation Order on the Appeal of the Denial of the Second Stay Relief Motion**

Once, as here, a plan is confirmed by the bankruptcy court, "'cause' for relief from stay must be based upon post[-]confirmation circumstances, such as a default by the debtor under the terms of the plan." In re Dumbuya, 428 B.R. 410, 416 (Bankr. N.D. Ohio 2009) (quoting In re Shultz, 325 B.R. 197, 201 (Bankr. N.D. Ohio 2005)).  Thus, under these circumstances, pre-confirmation issues "become[ ] moot."  Id.  The Dumbaya court reasoned:

> The goal in a Chapter 13 bankruptcy is to formulate a plan of reorganization. Once a plan is formulated and then confirmed by the court, its provisions are final and binding—§ 1327(a) sets forth that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

Id. (quoting In re Shultz, 325 B.R. at 201).  Here, the Second Stay Relief Motion was based solely on pre-confirmation events.  As the Plan has been confirmed, cause for relief from stay must be based upon post-confirmation events.  Accordingly, there is no relief we can fashion based on this record with respect to the Second Stay Relief Motion.  The appeal of the Order Denying Second Stay Relief Motion is therefore **DISMISSED** as **MOOT**.  See Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 987 F.3d 173, 181 (1st Cir. 2021) (stating that a court must dismiss an appeal as moot under Article III when it is "impossible . . . to grant any effectual relief whatever") (quoting Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1660 (2019)).  Accordingly, we do not address AEELA's setoff argument and, in particular, whether Section 5(a) of Act No. 9 of April 25, 2013 codifies a right of setoff upon a member's bankruptcy filing as AEELA asserts or whether that provision merely addresses AEELA's rights upon a member's separation.

## CONCLUSION

Based on the above analysis, we **AFFIRM**: (1) the Confirmation Order, and (2) the Order Denying Dismissal. The appeal of the Order Denying Second Stay Relief Motion is **DISMISSED** as **MOOT**.