IN RE Shawn L. BENOIT, Debtor.

Shawn L. Benoit, Appellant,

v.

Deutsche Bank National Trust Company, as Trustee for Residential Asset Securitization Trust Series 2007–A1 Mortgage Pass–Through Certificates Series 2007–A, Appellee.

BAP NO. EB 16–038

Bankruptcy Case No. 13–10821–MAF

United States Bankruptcy Appellate Panel of the First Circuit.

March 16, 2017

Thomas F. Shehan, Jr., Esq., on brief for Appellant.

Brigid F. Cech Samole, Esq., Ari Newman, Esq., and Stephanie L. Varela, Esq., on brief for Appellee.

Before Deasy, Tester, and Finkle, United States Bankruptcy Appellate Panel Judges.

Finkle, U.S. Bankruptcy Appellate Panel Judge.

Shawn L. Benoit (the "Debtor") appeals from the bankruptcy court's June 28, 2016 order dismissing his chapter 13 case (the "Order"). We find no abuse of discretion and **AFFIRM** the Order.

## BACKGROUND

The Debtor commenced a chapter 13 bankruptcy case on September 26, 2013. On his Schedule A–Real Property, the Debtor disclosed that he owned property in Corea, Maine (the "First Property"). He valued the property at $300,000 and indicated it was subject to a secured claim of approximately $550,000.[1] The Debtor also indicated on Schedule A that he held a $108,000 mortgage on the neighboring property (the "Second Property"). He noted by way of explanation: "Debtor initiated foreclosure proceedings. Mortgagor filed bankruptcy. The foreclosure needs to be re-initiated in [s]tate court." On Schedule B–Personal Property, he further disclosed that he had a contingent and unliquidated counterclaim against "Deutsche Bank National Trust," which he valued at $850,000. In his Statement of Financial Affairs, the Debtor reported that pre-petition "Deu[t]sche Bank National Trust Company" had commenced a foreclosure proceeding relating to the First Property.

The appellee, Deutsche Bank National Trust Company, as Trustee for Residential

---

1. On Schedule D–Creditors Holding Secured Claims, the Debtor disclosed that "Deutsche Bank National Trust Company" held a claim of $500,000, a portion of which was secured by an interest in the First Property.

Asset Securitization Trust Series 2007–A1 Mortgage Pass–Through Certificates Series 2007–A ("Deutsche"), filed a proof of claim reflecting an approximate $813,000 indebtedness secured by its mortgage on the First Property and a payment arrearage in the approximate amount of $315,000 as of the petition date. Deutsche designated in the proof of claim that all notices and payments should be sent to OneWest Bank, FSB ("OneWest"). In March 2014, Ocwen Loan Servicing, LLC ("Ocwen") filed a Transfer of Claim, indicating it had received a transfer of a claim from OneWest in the approximate amount of $813,000.[2]

After withdrawing two prior proposed plans, the Debtor submitted a Third Proposed Chapter 13 Plan (the "Plan") on June 11, 2014, in which he disputed Deutsche's claim and proposed to pay it $710 monthly, on account of its claim pending resolution of the matter. This sum was substantially less than the contractual monthly installment payment due on the indebtedness. In a "special provision" of the Plan, the Debtor further proposed to "begin the foreclosure of [the mortgage on the Second Property] ... within 60 days after approval of the [P]lan." He also indicated that he intended to "hire a civil litigation attorney to pursue lender liability claims against Deutsche" within "180 days after approval of the [P]lan."

On July 21, 2014, the bankruptcy court entered an Interim Order Confirming Chapter 13 Plan and Setting Deadlines for Certain Actions (the "Interim Order"), explicitly providing that it "d[id] not constitute final confirmation of the [P]lan ...." The Interim Order incorporated the deadlines the Debtor proposed in the Plan, including: (1) the commencement of an adversary proceeding against Deutsche within 180 days; (2) the filing of a complaint to foreclose the mortgage on the Second Property within 60 days; (3) the filing of a motion to allow or disallow claims within 90 days of the government claims bar date; (4) the filing of any applications to employ the necessary professionals to prosecute such actions within 30 days; and (5) the filing of a motion to avoid liens within 30 days. The Debtor did not comply with any of these deadlines.

On July 30, 2014, the bankruptcy court issued an Order to Show Cause, directing the Debtor to appear in court on August 21, 2014, to demonstrate why the case should not be dismissed for failure to prosecute the Plan; as the Debtor had failed to timely file a motion to allow or disallow claims. Prior to the hearing, the Debtor filed the required motion (the "Claim Motion") and a proposed order. In that motion he objected to "Ocwen's" claim on the grounds it had engaged in predatory lending practices, and proposed to treat that claim as follows: "Debtor will file an adversary proceeding against claimant. Until that is resolved Debtor requests that the Chapter 13 Trustee pay claimant $710[ ] per month." The chapter 13 Trustee (the "Trustee") objected to the Claim Motion and asked the bankruptcy court to continue the "interim confirmation," pending the outcome of the Debtor's contemplated adversary proceeding against Deutsche.

Thereafter, the Debtor withdrew the Claim Motion and filed an amended motion to allow and disallow claims (the "Amended Claim Motion"), seeking to modify the Plan by increasing his monthly payments to $800. He represented he could not afford to pay a greater amount due to his poor health and anticipated lay-off during the winter months.

**2.** As explained in Deutsche's brief, both OneWest and Ocwen are loan servicers for the mortgage and agents of Deutsche.

Deutsche filed an objection to the Amended Claim Motion, arguing the Debtor's chapter 13 plan: (1) failed to "fully account" for Deutsche's mortgage arrearage; (2) failed to "provide for payment of the contractually due mortgage payments"; and (3) was "not confirmable as a matter of law." Deutsche maintained that its right to repayment of the principal in monthly installments was "protected from modification by § 1322(b)(2)."[3] The Trustee likewise objected to the Amended Claim Motion.

At a hearing conducted on March 26, 2015, the bankruptcy court granted the Amended Claim Motion and directed the Debtor to submit a "[r]evised [p]roposed [o]rder" on the motion by April 2, 2015. The Debtor's failure to comply with that deadline prompted the bankruptcy court to enter another order—this time directing him to submit the required order by April 17, 2015. The Debtor complied by submitting the proposed order.

On June 3, 2015, the bankruptcy court entered an order on the Amended Claim Motion (the "June 2015 Order"), granting "further interim confirmation" and directing the Debtor to commence the required litigation by July 1, 2015, and move for final confirmation by December 4, 2015. Again, the Debtor did not comply with these deadlines or move to extend them. Nearly one year later, in May 2016, Deutsche filed its motion seeking dismissal of the Debtor's case pursuant to § 1307(c)(1) and (c)(6) (the "Motion to Dismiss"). As grounds for dismissal, Deutsche cited the Debtor's failure to commence either the adversary proceeding against it or the foreclosure action against the Second Property.

The Debtor filed an objection to the Motion to Dismiss, in which he acknowl-edged the requirements of the June 2015 Order and his noncompliance. To justify his failures, the Debtor explained that he had been unsuccessful in hiring experienced lender-liability counsel and assured the court that he would file an objection to Deutsche's claim "very soon." He requested that the Motion to Dismiss be denied. Later that same day, the Debtor belatedly filed a complaint against Deutsche initiating the adversary proceeding. He did not, however, serve the complaint on Deutsche. In reply, Deutsche countered that the Debtor's failure to adhere to court-imposed deadlines "was extremely prejudicial" to its interests because the Debtor was paying substantially less than the required monthly mortgage payments during the period of delay.

The bankruptcy court held two hearings in June 2016 regarding the Motion to Dismiss. At the first hearing, Deutsche again raised the issue of the Debtor's noncompliance with the terms of the Interim Order and the June 2015 Order. In response to the court's inquiry of how the delay in commencing the adversary proceeding prejudiced creditors, Deutsche's counsel stated: "[T]he Debtor has been paying significantly less than the required [mortgage] payment ...." He further explained that the Debtor had premised his deficient mortgage payments on the commencement of the adversary proceeding, which he thought the Debtor was required to commence within 60 days of the entry of the Interim Order. Deutsche's counsel emphasized: "That didn't happen. The Debtor is still paying less every month, shorting the Creditor. The Debtor then had the [Amended Claim Motion] filed, sets forth another deadline ... which was subsequently missed by ... 11 months."

---

**3.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

The Debtor's attorney countered this argument by reiterating the Debtor's difficulty in hiring knowledgeable lender-liability counsel. He also asserted that Ocwen, rather than Deutsche, had filed a proof of claim, thus raising the question of whether there was a potential "MERS issue." Unpersuaded by these asserted mitigating factors, the bankruptcy court inquired whether the Debtor had complied with any of the deadlines established in the June 2015 Order. The Debtor's attorney initially responded in the negative, and then added that he had recently filed the adversary proceeding against Deutsche, but admittedly had not served the complaint on Deutsche. Attempting to minimize the impact of the Debtor's failures, his attorney explained that the First Property, which secured Deutsche's claim, was oceanfront property with "considerable value." Still unpersuaded, the bankruptcy court responded: "[I]t seems to me that your client's failure to comply with the order on the [Amended Claims Motion] is cause for a conversion ... or dismissal of this case under [§ ] 1307. Do you dispute that?" The Debtor's attorney responded, "No, Your Honor."

The bankruptcy court continued the hearing on the Motion to Dismiss for two weeks, and encouraged the Debtor to reach an agreement with Deutsche in the interim in order to avoid case dismissal. The court warned that absent such an agreement, it was "hard pressed" to deny dismissal, given the Debtor's "admitted failures." At the continued hearing, the Debtor's attorney reported that no new developments had occurred and that his client remained financially unable to pay the full amount of the contractual monthly mortgage payment he owed to Deutsche.

Based on this report, the bankruptcy court then inquired of the Trustee which of the options—conversion or dismissal of the case—was in the best interest of the creditors and the estate. The Trustee did not express a preference, instead responding that he did not believe there were any assets to be administered if the case were converted to chapter 7. Deutsche's counsel stated that his client preferred dismissal. Accordingly, the bankruptcy court granted the Motion to Dismiss, reasoning:

> There's no dispute by the [Debtor] that he's failed to comply with a couple of deadlines established in various Court orders. There has been delay that I think is unreasonable, and is prejudicial to at least the Movant here as a result of the failure to meet those [c]ourt[-]imposed deadlines. So I'll dismiss the case effective today.

The court entered the Order the same day, and the Debtor filed this appeal.

## POSITIONS OF THE PARTIES

### I. The Debtor

On appeal, the Debtor does not contend that the bankruptcy court abused its discretion in dismissing his case. Instead, in his brief, the Debtor summarizes the three issues on appeal as: (1) whether the bankruptcy court "acted ultra vires" during the first hearing on the Motion to Dismiss by allegedly requiring the Debtor to modify the Plan "in a way that was clearly impossible" as a condition of avoiding dismissal; (2) whether the bankruptcy court "was arbitrary and capricious in finding that Deutsche ... had standing to file" the Motion to Dismiss, notwithstanding Deutsche's alleged failure to file a proof of claim;[4] and (3) whether the bankruptcy court "committed reversible error in find-

---

4. In his statement of issues on appeal, the Debtor identified the second issue as whether the bankruptcy court was "arbitrary and ca-

pricious in allowing Deutsche ... standing to file [the] Motion to Dismiss." This distinction does not affect the outcome of the appeal.

ing that Deutsche ... was inadequately secured." The Debtor asks the Panel to vacate the Order and remand this matter to allow his adversary proceeding against Deutsche to move forward.

## II. Deutsche

Deutsche challenges the Debtor's argument that the bankruptcy court acted without authority. It maintains that the bankruptcy court acted within its equitable powers under § 105 to enforce the applicable provisions of the Bankruptcy Code and to dismiss the case. According to Deutsche, the bankruptcy court also possessed the power to set "reasonable deadlines for the Debtor to accomplish goals in the reorganization." The Debtor's failure to comply with these deadlines, Deutsche contends, justified dismissal, and the Debtor abused "the bankruptcy system" by availing himself of the protection afforded by the automatic stay under § 362(a) "while making wholly inadequate monthly mortgage payments."

Deutsche rejects the assertion that it did not file a proof of claim and defends its standing to file the Motion to Dismiss, maintaining that as a secured creditor it was a party in interest "with a significant legal stake in the outcome of the case." Additionally, noting it is only for the first time on appeal that the Debtor argues Deutsche was adequately secured, Deutsche contends that the argument is waived.

Lastly, Deutsche argues that the Plan is "patently unconfirmable" as it impermissibly proposes to alter Deutsche's contractual rights. The Debtor's "protracted inability to demonstrate the feasibility" of the Plan amounts to prejudice warranting dismissal, regardless of whether its lien is intact, Deutsche argues. Observing that the "bankruptcy court was far more patient than it needed to be with the Debt-

or," Deutsche submits that the entry of the Order was "entirely appropriate."

## JURISDICTION

Before addressing the merits of an appeal, we must determine the threshold issue of whether the Panel has jurisdiction, even if the litigants have not raised the issue. Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540, 546–47 (1st Cir. BAP 2005) (citing Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (1st Cir. BAP 1998)). A panel may hear appeals from final judgments, orders, and decrees. See 28 U.S.C. § 158(a)–(c); see also Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). " 'An order dismissing a [c]hapter 13 case is a final, appealable order.' " Sepulveda Soto v. Doral Bank (In re Sepulveda Soto), 491 B.R. 307, 311 (1st Cir. BAP 2013) (quoting Gonzalez–Ruiz v. Doral Fin. Corp. (In re Gonzalez–Ruiz), 341 B.R. 371, 375 (1st Cir. BAP 2006)); see also Pellegrino v. Boyajian (In re Pellegrino), 423 B.R. 586, 589 (1st Cir. BAP 2010) (citing Howard v. Lexington Invs., Inc., 284 F.3d 320 (1st Cir. 2002)). Therefore, we have jurisdiction.

## STANDARD OF REVIEW

"Appellate courts apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law." Belser v. Nationstar Mortg., LLC (In re Belser), 534 B.R. 228, 233 (1st Cir. BAP 2015) (citation omitted). "An order allowing a motion to dismiss pursuant to ... § 1307 is reviewed only for abuse of discretion." Roberts v. Boyajian (In re Roberts), 279 F.3d 91, 92 (1st Cir. 2002) (citation omitted); see also Witkowski v. Boyajian (In re Witkowski), 523 B.R. 300, 305 (1st Cir. BAP 2014) (citing Howard,

284 F.3d at 322); Zizza v. Pappalardo (In re Zizza), 500 B.R. 288, 292 (1st Cir. BAP 2013) (citation omitted). "An abuse of discretion occurs when the trial court ignores a material factor deserving significant weight, relies upon an improper factor, or assesses all proper and no improper factors, but makes a serious mistake in weighing them." Bellas Pavers, LLC v. Stewart (In re Stewart), No. MB 12-017, 2012 WL 5189048, at \*5 (1st Cir. BAP Oct. 18, 2012) (citation omitted).

## DISCUSSION

### I.  The Standard

■■ "Section 1307 governs dismissal of a chapter 13 case." In re Baril, No. 09-20112, 2015 WL 1636442, at \*2 (Bankr. D. Me. Apr. 10, 2015). Subsection 1307(c) provides that, "on request of a party in interest or the United States trustee and after notice and a hearing," the court, for cause, may dismiss a case under chapter 13 or convert the case to chapter 7, "whichever is in the best interests of creditors and the estate ...." 11 U.S.C. § 1307(c).[5] The moving party under § 1307(c) bears the burden of proof. In re Zizza, 500 B.R. at 292 (citation omitted). "There is only one element necessary to establish a prima facie case for dismissal of a [c]hapter 13 bankruptcy case or conversion of the case to [c]hapter 7 ...; the moving party must show 'cause'...." 70 David M. Holliday, Causes of Action 2d 521 (rev. 2016). The decision to dismiss or convert a chapter 13 case for cause is committed to the bankruptcy court's discretion. See, e.g., Howard, 284 F.3d at 322–23.

### II.  The Standard Applied

■ Here, in response to the bankruptcy court's inquiry, counsel for the Debtor conceded that his client's failure to comply with the June 2015 Order constituted cause for conversion or dismissal under § 1307(c). The bankruptcy court accorded little if any weight to the mitigating factors the Debtor proffered. On appeal, the Debtor has not presented argument as to how the bankruptcy court abused its discretion in concluding that his alleged mitigating factors were insufficient to overcome the grounds establishing "cause" under this provision, as the debtor acknowledged. Nor does he address the dismissal of the case rather than its conversion based on the cause shown. As such, the Debtor failed to satisfy his burden.

■ The Debtor's three arguments on appeal are unavailing. His assertion that the bankruptcy court "acted ultra vires" by allegedly requiring him to modify the Plan "in a way that was clearly impossible" is a mischaracterization of what transpired in the proceedings below, and is without merit. The court simply advised the Debtor that unless he could reach some agreement with Deutsche, it would dismiss the case for cause. More significantly, the Debtor failed to raise the issue of the court's authority in this regard at either of the hearings and acquiesced to continuing the first hearing on the Motion to Dismiss. Instead, he raises this argument for the first time on appeal and thus it has been waived. See Redondo Constr. Corp. v. P.R. Highway & Transp. Auth. (In re Redondo Constr. Corp.), A.P. No. 03-00192 (ESL),

---

**5.**  "Cause for dismissal is not specifically defined in [§ ] 1307, but subsection (c) sets forth [a] nonexclusive list of eleven examples of cause." In re Acevedo, No. 12-12393-JNF, 2014 WL 1664255, at \*3 (Bankr. D. Mass. Apr. 25, 2014) (citing 11 U.S.C. § 1307(c)). Section 1307(c)(1) provides that in a chapter 13 case, "unreasonable delay by the debtor that is prejudicial to creditors" is grounds for conversion to chapter 7 or dismissal. 11 U.S.C. § 1307(c)(1). Section 1307(c)(6) authorizes dismissal or conversion in the event of a "material default by the debtor with respect to a term of a confirmed plan[.]" 11 U.S.C. § 1307(c)(6).

2015 WL 269247, at \*4 (Bankr. D.P.R. Jan. 21, 2015) ("Arguments raised for the first time on appeal are waived.") (citations omitted).

 Equally unpersuasive is the Debtor's contention that the bankruptcy court was "arbitrary and capricious in finding that Deutsche" possessed standing to file the Motion to Dismiss notwithstanding Deutsche's alleged failure to file a proof of claim. The record discloses no such finding at either of the hearings on the Motion to Dismiss. In any event, the filing of a proof of claim is not a prerequisite for standing to pursue dismissal under § 1307. Armstrong v. Rushton (In re Armstrong), 303 B.R. 213, 219 (10th Cir. BAP 2004). "[A]ny creditor with a right to payment has standing to request dismissal." Azam v. U.S. Bank Nat'l Ass'n (In re Azam), 642 Fed. Appx. 777, 779 (9th Cir. 2016) (citation omitted); see also Torres Martinez v. Rivera Arce (In re Torres Martinez), 397 B.R. 158, 164 (1st Cir. BAP 2008). And in the end, at the hearings the Debtor did not dispute Deutsche's creditor status. As such, this line of argument also fails.

Finally, the Debtor's position that the bankruptcy court committed reversible error in finding that Deutsche was inadequately secured is likewise easily dispatched. The Debtor's oblique reference to the bankruptcy court that the Debtor's real estate was quite valuable does not suffice. This challenge is highly questionable where Deutsche's counsel and the Trustee both indicated to the bankruptcy court that there would be no assets of the estate to administer upon a conversion of the case. The record is devoid of any suggestion whatsoever that the bankruptcy court made a finding regarding the extent of Deutsche's secured claim. We concur with Deutsche that the Debtor waived this argument by failing to raise it in the proceedings below. See In re Redondo Constr. Corp., 2015 WL 269247, at \*4.

## CONCLUSION

As the Debtor has not demonstrated how the bankruptcy court abused its discretion in dismissing the case and instead raised arguments that are either unwarranted or waived due to his failure to raise them below, we **AFFIRM** the Order.