FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT

BAP NO. MB 23-007

Bankruptcy Case No. 22-11302-JEB

SERGE OHANNES KARAMOUSSAYAN,
Debtor.

SERGE OHANNES KARAMOUSSAYAN,
Appellant,

v.

MASSACHUSETTS DEPARTMENT OF REVENUE,
Appellee.

Appeal from the United States Bankruptcy Court
for the District of Massachusetts
(Janet E. Bostwick, U.S. Bankruptcy Judge)

Before
Finkle, Chief U.S. Bankruptcy Appellate Panel Judge;
Harwood and González, U.S. Bankruptcy Appellate Panel Judges.

David G. Baker, Esq., on brief for Appellant.
Stephen G. Murphy, Esq., on brief for Appellee.

February 12, 2024

**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge.**

Serge Ohannes Karamoussayan (the "Debtor"), who owned and operated a jewelry store in Boston, Massachusetts, appeals from the bankruptcy court's order converting his chapter 13 bankruptcy case to one under chapter 7 for cause under § 1307(c) (the "Conversion Order").[1] For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### I. The Cash Collateral Proceedings

The Debtor filed the chapter 13 bankruptcy case from which this appeal arises in September 2022.[2] Shortly after the filing, the Massachusetts Department of Revenue (the "MDOR") filed a proof of claim in the amount of $24,031 for unpaid taxes, partially secured by tax liens on all the Debtor's property, including cash and other business assets associated with operating a retail jewelry and repair store.[3] The bankruptcy court's conversion of the Debtor's case to chapter 7 stems from his unauthorized use of the cash collateral subject to the MDOR's tax lien.

#### A. The October 2022 Order Denying Use of Cash Collateral

On October 7, 2022, the Debtor filed an emergency motion for interim and final orders under §§ 105 and 363 approving his use of cash collateral (the "Cash Collateral Motion").

---

[1] Unless otherwise indicated, all references to specific statutory sections are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. Dollar amounts are rounded down to the nearest dollar.

[2] This is the Debtor's third bankruptcy case in four years. His prior chapter 13 and chapter 11 cases were both dismissed for failure to comply with his obligations as a debtor. See In re Karamoussayan, Nos. 19-10975 and 21-11013 (Bankr. D. Mass.); see also TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 591 n.1 (B.A.P. 1st Cir. 2014) (stating Panel "may take judicial notice of the bankruptcy court's docket and imaged papers"). The bankruptcy judge in the current case also presided over the Debtor's prior cases.

[3] Although the Debtor objected to the characterization of the MDOR's claim as partially secured, the bankruptcy court overruled that objection. The Debtor's appeal of the order overruling his claim objection is pending before the BAP. See BAP No. MB 22-041.

After a hearing on October 13, 2022, the bankruptcy court entered an order denying the interim use of cash collateral and scheduled a final hearing on the Cash Collateral Motion for November 9, 2022 (the "October Order Denying Use of Cash Collateral"). The bankruptcy court also ordered that by October 26, 2022, the Debtor was to "file any supplement to the Motion including any budget projections or offer of adequate protection."

**B.      The November 2022 Order Denying Use of Cash Collateral**

On October 26, 2022, the Debtor filed a supplemental memorandum in support of the Cash Collateral Motion, asserting there was a "reasonable dispute" as to whether the MDOR was a secured creditor entitled to adequate protection and that interim use of cash collateral should be allowed until the issue was resolved. The Debtor did not provide any "budget projections" or offers of adequate protection as instructed by the bankruptcy court.

The MDOR objected to the Cash Collateral Motion, contending it held perfected and enforceable statutory liens on all the Debtor's assets, and the Debtor should be prohibited from using cash collateral unless the MDOR's interests were adequately protected. The MDOR stated it would accept adequate protection payments if offered, but it was "not pressing for adequate protection payments" at that time. Instead, the MDOR sought replacement liens on the Debtor's post-petition assets.

After a second cash collateral hearing on November 9, 2022, the bankruptcy court again denied the Debtor's request because of his failure to submit budget projections and to offer adequate protection to the MDOR. The bankruptcy court's order (the "November Order Denying Use of Cash Collateral") unambiguously stated: "The Debtor is not authorized to use cash collateral without further order of this court or written assent of the lienholder . . . ." The Debtor did not seek reconsideration or appeal the November Order Denying Use of Cash Collateral.

3

## C.     The December 2022 Cash Collateral Order

A few weeks later, the Debtor filed a "renewed" emergency motion for permission to use cash collateral (the "Renewed Cash Collateral Motion"), along with a budget of estimated operating income and expenses (the "Budget").  The MDOR again objected, reiterating it would not consent to the Debtor's use of cash collateral unless its interests were adequately protected.

After a hearing on December 15, 2022, the bankruptcy court entered an order authorizing the Debtor's use of cash collateral, on an interim basis, until the day after a final hearing to be held on February 23, 2023 (the "December Cash Collateral Order").  In that order, the court expressly limited the Debtor's use of cash collateral to payment of those business expenses listed in the Budget, "subject to a variance of no more than [10%] on any expense."  The bankruptcy court also: (1) granted the MDOR replacement liens on the Debtor's post-petition assets; (2) ordered the Debtor to timely file sales tax returns and pay post-petition sales taxes; and (3) directed the Debtor to file, by January 15, 2023, a report comparing budgeted to actual expenses incurred through December 31, 2022.  The Debtor did not seek reconsideration or appeal the December Cash Collateral Order.

## D.     The January 2023 Budget to Actual Report

On January 23, 2023, the Debtor filed an "Affirmation of Debtor Regar[d]ing Monthly Report" (the "Affirmation"), in which he admitted that some of his actual expenses exceeded the 10% variance restriction, but argued the limitation was "neither practical nor sound business judgment, because some time periods will have higher or lower amounts for the respective categories."  The Debtor also filed a report which compared budgeted expenses with actual expenses incurred in October, November, and December 2022 (the "Budget Report").  Although the Debtor was not authorized to use cash collateral to operate his business until mid-December, the Budget Report reflected actual "retail sales" of $17,074 for October, $14,034 for November,

and $47,192 for December, and payment of operating expenses during those months. Further, the Budget Report showed the Debtor spent significantly more than the budgeted amounts for certain expenses and paid some expenses which were not included in the Budget. It also listed a sales tax payment of $937 in October but none for November or December.

Upon receipt of the Affirmation and the Budget Report, the bankruptcy court scheduled an emergency hearing for January 26, 2023.

### E. The January 2023 Cash Collateral Order

After the January 26, 2023 emergency hearing on the Renewed Cash Collateral Motion, Affirmation, and Budget Report, the bankruptcy court entered an order (the "January Cash Collateral Order") reiterating that the Debtor was only authorized to use cash collateral in accordance with the terms of the December Cash Collateral Order. The court also stated it would issue a separate order on "the issue of whether the Debtor violated the order, and, if so, determination of an appropriate remedy, including dismissal of the case." The Debtor did not seek reconsideration or appeal the January Cash Collateral Order.

### F. Debtor's Initial Sales Tax Returns

During these ongoing cash collateral proceedings, the Debtor filed with the MDOR his October and November 2022 Massachusetts sales tax returns for the jewelry business, reporting no income for those months, despite the Budget Report listing significant sales income. Then, on January 30, 2023 (after filing the Budget Report reflecting sales income of $47,192 for December), the Debtor filed a sales tax return for December 2022 reporting only $4,500 in sales income.

5

**II.      Order to Show Cause and Conversion to Chapter 7**

**A.      The Order to Show Cause**

On February 1, 2023, the bankruptcy court issued an Order to Show Cause, directing the Debtor to demonstrate why his case should not be converted to one under chapter 7 or dismissed "for cause under [§] 1307(c), including for failure to comply with orders of the Court, for the unauthorized use of cash collateral, and for failure to pay postpetition taxes and file accurate and complete sales tax returns."  In the Order to Show Cause, the court detailed the objectionable conduct underlying its issuance, explaining:

> By order dated November 9, 2022, the Debtor was "not authorized to use cash collateral without further order of this court or written assent of the lienholder . . . ." On December 15, 2022, the Court authorized the Debtor to use cash collateral but only on certain terms and conditions ("Cash Collateral Order").  As more fully set forth in the Cash Collateral Order, the Debtor was only authorized to use cash collateral for the expenses set forth in the monthly budget, subject to a 10 percent variance per expense.  The Debtor also was required to timely prepare and file sales and use tax returns and to pay sales tax timely.

> On January 23, 2023, the Debtor filed an Affirmation & Report ("Report") that shows, although expressly prohibited, the Debtor used cash collateral during October and November 2022.  In addition, the Report also shows that the Debtor used cash collateral for expenses not authorized by the Cash Collateral Order.  For example, although the Debtor was only authorized to pay himself $4,800.00 as payroll on a monthly basis, the Report shows that he instead paid $14,650.00 to himself as a payroll expense in December 2022.  The Report also shows $10,000.00 as an "Other" expense in December 2022 that was not authorized.

> The Debtor also appears to have failed to timely pay sales tax as required by the Court.  The Report lists sales income of $17,074.00 in October 2022, $14,034.44 in November 2022, and $47,192.78 in December 2022, but it lists a sales tax payment

6

only in October.  At a hearing on January 26, 2023, counsel to the [MDOR] also noted discrepancies between the Report and the Debtor's sales tax returns which were stated to have shown no sales in October 2022 and November 2022 and only $4,500.00 in December 2022.

## B.    Debtor's Responses to Order to Show Cause

Apparently in response to the Order to Show Cause, on February 3, 2023, the Debtor filed with the MDOR amended sales tax returns for October, November, and December 2022, reporting sales income of $2,280, $10,450, and $13,057, respectively, for those months.  The Debtor also filed a sales tax return for January 2023, reflecting sales income of $17,200.

On February 8, 2023, the Debtor filed a formal response to the Order to Show Cause in which he insisted he "did not willfully or deliberately disobey any court order."  He justified his conduct by asserting that the jewelry business is based on cash transactions, "which made it wholly necessary to deviate from the 10% variance in order to stay in business."  Disregarding the October Order Denying Use of Cash Collateral, the Debtor asserted that he "had no reason to believe that use of cash collateral was prohibited prior to" the entry of the November Order Denying Use of Cash Collateral.  Moreover, he maintained that when the bankruptcy court entered that order, he thought it meant he "should not pay any creditor, not even the [MDOR]," notwithstanding that the Budget Report disclosed he used cash collateral to pay other business expenses during those months.  Additionally, the Debtor stated that he believed he "properly and accurately prepared" his sales tax returns, but admitted the returns for November and December were "incorrect" and required amendment.

Lastly, the Debtor conceded he had "greatly underestimated some [expense] items" and the Budget had to be amended.  To that end, the Debtor filed an amended cash collateral budget and a Revised Budget to Actual Report (the "Revised Budget Report").  Although the Debtor purported to amend the Budget, there was only a slight reduction in his estimated monthly

income and, notably, his estimated monthly expenses remained unchanged. There were, however, significant differences in the *actual* income and expenses reported. The Debtor reported substantially less income from "retail sales" for December, and he listed additional income from "repair & custom creations sales" for October, November, and December, whereas the previous report listed no such sales. As with the original report, the Revised Budget Report showed no sales tax payments made in November and December and listed numerous actual expense payments far in excess of the budgeted expenses.

**C        MDOR's Response to Order to Show Cause and Debtor's Counter**

The MDOR filed its response to the Order to Show Cause, arguing there was "ample cause" to either convert or dismiss the case based on: (1) the Debtor's use of cash collateral during October and November 2022 in violation of § 363(c) and the multiple orders prohibiting such use; (2) the Debtor's violation of the December Cash Collateral Order by paying expenses not identified in the Budget and/or in excess of the 10% variance; and (3) the "egregious discrepancies" between the sales income reported to the bankruptcy court and that reported to the MDOR in his sales tax returns.[4] Additionally, the MDOR argued that if the Debtor was not "intentionally disregarding" the court's orders, then the only possible explanation was that he was "incapable of understanding" the court's instructions and his obligations as a chapter 13 debtor. Consequently, conversion of the case rather than dismissal was in the best interests of

---

[4] The MDOR emphasized that the Budget Report listed actual retail sales income of $17,074 for October, $14,034 for November, and $47,192 for December. The Debtor's sales tax returns, however, showed $0 in total sales for October and November and only $4,500 for December. Although the subsequent Revised Budget Report listed retail sales of $17,074 for October, $14,034 for November, and $19,207 for December, those figures were still significantly different from the amounts disclosed on the amended sales tax returns the Debtor filed with the MDOR just two days prior—listing total sales of $2,280 for October, $10,450 for November, and $13,057 for December. Accordingly, the MDOR contended that the Debtor's amended sales tax returns and the Revised Budget Report were still irreconcilable.

creditors because as a serial bankruptcy filer it was likely the Debtor would only file a new bankruptcy case if the present case were dismissed.

The Debtor countered the MDOR's response by asserting—for the first time—that the bankruptcy court erred when it found he was "engaged in business" within the meaning of § 1304. The Debtor maintained that although he was self-employed, he did not incur "trade credit" and thus his retail operations did not fall within the scope of § 1304. The Debtor also argued that the MDOR was not entitled to adequate protection for his use of cash collateral because: (1) the MDOR was not "*actually* secured"; and (2) the MDOR had "repeatedly disavowed any desire for adequate protection payments." Finally, the Debtor argued that the 10% variance imposed by the December Cash Collateral Order placed "an arbitrary, baseless, and unworkable limitation" on his ability to do business.

### D.    Hearing on Order to Show Cause

On March 2, 2023, the bankruptcy court held a non-evidentiary hearing on the Order to Show Cause, at which the parties essentially reiterated the arguments made in their responses to that order. The Debtor explained that because not all business income was subject to sales tax, it was no "surprise . . . that there would be a divergence between what's reported on the [sales] tax return and the income that's reflected [on the reports]." The MDOR challenged the Debtor's argument that § 1304 did not apply because he had no trade creditors, noting that the cases cited by the Debtor were distinguishable from the present case. The chapter 13 trustee expressed concerns about the inconsistencies between the Debtor's assertions that he could not make sales tax payments to the MDOR or plan payments to the trustee because the court had denied his use of cash collateral, while he was, at the same time, using cash collateral in the operation of his business in violation of court orders.

9

### E.  The Bench Ruling and Conversion Order

Ruling from the bench, the bankruptcy court concluded there were ample grounds to convert the case to chapter 7 based on several factors.  First, the court considered the Debtor's unauthorized use of cash collateral in violation of § 363(c)(2) and the court's cash collateral orders.  The court emphasized it had made clear to the Debtor, in both his prior chapter 11 case and in the present bankruptcy case, that he could not use cash collateral without either court approval or the consent of the MDOR which held a tax lien on the cash collateral.[5]  Despite such unequivocal restrictions, the Debtor nonetheless used cash collateral in October and November 2022.  And, when finally authorized to use cash collateral on a limited basis in December 2022, the Debtor ignored those limitations and "went ahead and spent whatever [he] felt like."  Second, the court was troubled by the discrepancies between the sales income figures reported to the court and those reflected on the Debtor's sales tax returns filed with the MDOR, as well as the significant variations in the figures listed in his budget reports.  These discrepancies, the court stated, left the court, the chapter 13 trustee, and the parties unable to discern what figures were accurate.  In the aggregate, the court found that the Debtor's unauthorized use of cash collateral in violation of "his obligations under the Code," his "repeated failure . . . to comply with orders

---

[5]  In the Debtor's prior chapter 11 case (No. 21-11013), after the MDOR sought dismissal of the case due to, among other things, the Debtor's unauthorized use of its cash collateral, the bankruptcy court entered an order expressly prohibiting the Debtor from using cash collateral absent a court order.  The Debtor was further warned that the prohibition applied whether or not he challenged the validity of the MDOR's liens.  The Debtor's subsequent motion for authority to use of cash collateral, to which the MDOR objected, was denied.

of the Court," and "the varying numbers" reported to the court and the MDOR, constituted "cause under the Code to convert this case."[6]

In determining that conversion rather than dismissal was warranted, the court agreed with the MDOR, finding it significant that the Debtor "really didn't think he was doing anything wrong." Under these circumstances, the court concluded it was appropriate for a chapter 7 trustee to determine whether the business should be closed, sold for the benefit of creditors, or permitted to continue operations.

Following the hearing, the bankruptcy court entered the Conversion Order. This appeal followed.[7]

## POSITIONS OF THE PARTIES

### I.      The Debtor

On appeal, the Debtor argues that the bankruptcy court abused its discretion in converting the case to chapter 7 because of his unauthorized use of cash collateral, insisting that he "did his best" to comply with the cash collateral orders and that he does not understand "what obligations he violated or failed to perform." The Debtor further contends the MDOR was not entitled to adequate protection for his use of cash collateral because the MDOR was not secured and had waived its right to adequate protection payments. The Debtor also asserts error by the

---

[6] The court underscored that the Debtor had not commenced an adversary proceeding challenging the validity of the MDOR's tax liens and, therefore, any dispute about those liens was not before the court. It also rejected the Debtor's newly advanced argument that he was not "engaged in business" within the meaning of § 1304 stating, among other things, that the cases the Debtor cited were inapposite and the Debtor "wants to have his cake and eat it too. He wants to claim he is not engaged in business. But the Code is clear. If you are not engaged in business, you're not authorized to operate a business."

[7] Although the Debtor sought a stay pending appeal from both the bankruptcy court and the Panel, those requests were denied. There are, however, no obvious indicia of mootness in the record or the docket notwithstanding the absence of a stay.

11

bankruptcy court in determining that he was "engaged in business" for purposes of § 1304, as there was no evidence he incurred "trade credit."

Finally, the Debtor challenges the "[a]llegedly conflicting financial information" as a basis for conversion. He points to the reduction of the MDOR's $67,000 claim in his prior chapter 11 case to about $24,000 in the current case as proof that the "conflicting financial information" submitted in the current case was "not unreasonable." Noting that he "has no training in accounting," the Debtor asserts he "attempted to explain the conflicts [at the hearing on the Order to Show Cause], . . . but the [bankruptcy] court turned a deaf ear to his explanation."

## II.     MDOR

The MDOR maintains that the bankruptcy court properly exercised its sua sponte power to convert the case to chapter 7 for "compelling cause." The court, the MDOR contends, "was confronted with a debtor who repeatedly and in multiple ways violated the Court's orders, as well as disregarded . . . [§] 363(c)['s] prohibitions on the use of cash collateral for months, while maintaining a facade that he was actually complying with those orders and statutory prohibitions . . . ." The MDOR further relies on (1) the Debtor's "serially and seriously inaccurate" reporting to the bankruptcy court and in his sales tax returns, and (2) his "woeful" compliance with his obligation to pay sales taxes, as more than adequate cause to convert the case to chapter 7.

To counter the Debtor's argument that he was not actually engaged in business, the MDOR stresses that the Debtor was the one who sought, and eventually obtained, permission to use cash collateral, and only after his unauthorized use of cash collateral became apparent did he argue he was not "engaged in business" for purposes of § 1304. The Debtor, the MDOR argues, should be judicially estopped from asserting a position that contradicted the position previously taken throughout his case, and the Conversion Order should be affirmed.

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020). A bankruptcy court's order converting a chapter 13 case to one under chapter 7 is a final, appealable order. Zizza v. Pappalardo (In re Zizza), 500 B.R. 288, 292 (B.A.P. 1st Cir. 2013). Therefore, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

"A bankruptcy court's decision to dismiss or convert a case under § 1307(c) is reviewed for an abuse of discretion." Id. (quoting Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 210 (B.A.P. 1st Cir. 2005)); see also Howard v. Lexington Invs., Inc., 284 F.3d 320, 323 (1st Cir. 2002) (reviewing dismissal under § 1307(c) for abuse of discretion). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." In re Zizza, 500 B.R. at 292 (citation omitted).

## DISCUSSION

### I. The Legal Framework

In the Order to Show Cause, the bankruptcy court expressly referenced § 1307(c) and ultimately ruled at the hearing that there was "cause under the Code to convert this case." We turn, therefore, to this statutory provision.

Section 1307(c) provides that, "on request of a party in interest . . . and after notice and a hearing," the court, "for cause," may dismiss a chapter 13 case or convert the case to chapter 7, "whichever is in the best interests of creditors and the estate." See 11 U.S.C. § 1307(c). It is well established that a bankruptcy court may dismiss or convert a case under § 1307(c) sua sponte. See, e.g., Amelio v. Piazza (In re Amelio), 857 F. App'x 665, 666 (2d Cir. 2021) (recognizing bankruptcy court's authority to convert chapter 13 case to chapter 7 under § 1307(c)

13

on its own motion pursuant to § 105(a)); Howard, 284 F.3d at 323 ("The powers bestowed upon the court in § 105(a) include the equitable and discretionary power to dismiss [or convert] a case under § 1307(c).").  Although dismissal or conversion under § 1307(c) requires "notice and a hearing," evidentiary hearings are not required where, as here, the parties did not request an evidentiary hearing and the core facts are undisputed.[8]  See Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006); see also Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.), 490 B.R. 470, 479 (S.D.N.Y. 2013).

"[Q]uestions of conversion and dismissal" involve a "two-step process."  Olson v. Van Meter (In re Olson), BAP No. NV-17-1168-LTiF, 2018 WL 989263, at *5 (B.A.P. 9th Cir. Feb. 5, 2018).  "First, it must be determined that there is 'cause' to act.  Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'"  Id. (citation omitted).  "The decision to dismiss or convert a chapter 13 case for cause is committed to the bankruptcy court's discretion."  Benoit v. Deutsche Bank Nat'l Tr. Co. (In re Benoit), 564 B.R. 799, 805 (B.A.P. 1st Cir. 2017) (citing Howard, 284 F.3d at 322-23).

The term "cause" is not defined in the Bankruptcy Code, but § 1307(c) "includes a nonexclusive list of . . . causes justifying" dismissal or conversion of a chapter 13 case. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 373 (2007).  Because the list is not exclusive, however, courts have recognized other "causes" for dismissal or conversion of chapter 13 petitions in addition to those specifically enumerated in § 1307(c).  See Kestell v. Kestell (In re

---

[8]  In addition, the Debtor has never contested—either in the bankruptcy proceedings or on appeal—that he repeatedly used cash collateral without court authority and in direct violation of the court's orders. We are, therefore, unpersuaded by the Debtor's argument that the bankruptcy court abused its discretion in converting the case without giving him "any opportunity to offer evidence," suggesting these core facts were disputed and he was deprived of an evidentiary hearing.

Kestell), 99 F.3d 146, 148 (4th Cir. 1996) ("Reasons constituting 'cause' . . . include enumerated ones, . . . as well as judicially construed ones . . . .") (citations omitted); In re Lilley, 91 F.3d 491, 494 (3d Cir. 1996) ("It is . . . beyond dispute that a court may consider matters other than those enumerated in [§] 1307(c) as grounds for dismissal [or conversion] of a Chapter 13 petition."). Ultimately, "the [cause] analysis must rest on a holistic assessment of the unique aspects of a particular case" and "include consideration of the fundamental purposes and principles of United States bankruptcy law . . . ." In re Zamora, No. 19-01040-WLH13, 2020 WL 4289926, at *6 (Bankr. E.D. Wash. July 27, 2020).

## II.    Applying the Legal Standards

Here, the bankruptcy court determined there was cause to convert the case based on several factors: (1) the Debtor's unauthorized use of cash collateral in violation of § 363(c)(2) and court orders expressly prohibiting and/or limiting such use; and (2) the persistent inaccuracies and inconsistencies in the Debtor's budget reports and sales tax returns. We conclude that the bankruptcy court did not abuse its discretion in converting the case to one under chapter 7 under § 1307(c) based on the Debtor's repeated use of cash collateral in violation of the Bankruptcy Code and the bankruptcy court's orders.

### A.    Unauthorized Use of Cash Collateral and Violation of Court Orders

Section 1304(b) authorizes a chapter 13 debtor who is "engaged in business" to "operate the business subject to the limitations under [§] 363(c), unless the court orders otherwise." In re Reynoso, No. 22-12017-MKN, 2022 Bankr. LEXIS 3675, at *12 (Bankr. D. Nev. Nov. 4, 2022) (citing 11 U.S.C. § 1304(b)). Section 363(c), in turn, provides that "cash collateral in which a secured creditor has an interest cannot be used without consent of the

15

creditor or an express order of the court." Id. (citing 11 U.S.C. § 363(c)(2)).[9] "A court may only authorize the use of cash collateral over the secured creditor's objection if the court finds that the secured creditor's interest is adequately protected." In re Chardon, LLC, No. 13-B-81372, 2015 Bankr. LEXIS 140, at *7 (Bankr. N.D. Ill. Jan. 12, 2015) (citations omitted), aff'd, 535 B.R. 772 (N.D. Ill. 2015). These provisions "recognize the unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral in a rehabilitative effort in bankruptcy." Collier on Bankruptcy ¶ 363.03[4] (Richard Levin & Henry J. Sommer eds., 16th ed.) (hereinafter, "Collier on Bankruptcy").[10]

Consistent with the special protections afforded cash collateral, the "unauthorized use of cash collateral" is among the listed causes requiring dismissal or conversion in chapter 11 cases. See 11 U.S.C. § 1112(b)(4)(D) (providing that court "shall" dismiss or convert case where it finds "unauthorized use of cash collateral substantially harmful to 1 or more creditors"). Although § 1307(c) does not list unauthorized use of cash collateral as a specific example of "cause," bankruptcy courts may consider a chapter 13 debtor's unauthorized use of cash collateral in its analysis of cause to dismiss or convert the case. See Marrama, 549 U.S. at 373

---

[9]  Section 1304(b) provides:

Unless the court orders otherwise, a debtor engaged in business may operate the business of the debtor and, subject to any limitations on a trustee under sections 363(c) and 364 of this title and to such limitations or conditions as the court prescribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.

11 U.S.C. § 1304(b).

[10]  We reject the Debtor's argument that the bankruptcy court "erred as a matter of law" in determining he was engaged in business for purposes of § 1304. The Debtor affirmatively sought authority to use cash collateral in the operation of his jewelry business, and he was estopped from later arguing he was *not* engaged in business. See Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010) ("[J]udicial estoppel . . . prevent[s] a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case . . . .") (citation omitted).

(recognizing that "causes" listed in § 1307(c) are nonexclusive); see also Collier on Bankruptcy ¶1112.01 (recognizing, in the context of analogous § 1112, that a bankruptcy court "has discretion in determining what additional circumstances not enumerated in [the statute] constitute cause"). It follows, therefore, that the bankruptcy court's conversion of the case under § 1307(c) because of the Debtor's repeated unauthorized use of cash collateral in violation of § 363(c) did not constitute an abuse of discretion under the circumstances presented.[11]

Here, the record reflects that the Debtor was repeatedly warned in both his prior chapter 11 case and in his current bankruptcy case that he could not use cash collateral without court approval and without providing adequate protection to the MDOR. Blatantly ignoring the court's denial of his first two requests to use cash collateral, he repeatedly used cash collateral throughout October and November 2022 to pay operating expenses while, at the same time, failing to pay sales taxes to the MDOR. Nor was the Debtor unaware of the specific restrictions placed on his use of cash collateral once the bankruptcy court finally authorized his limited use in mid-December 2022. Again, completely disregarding such restrictions, the Debtor continued

---

[11] Although there is a dearth of case law discussing unauthorized use of cash collateral in the context of § 1307(c), the case law is replete with examples of chapter 11 dismissals or conversions for unauthorized use of cash collateral. See, e.g., Pena v. Manfredo, 582 F. App'x 744, 745 (9th Cir. 2014); In re Bowers Inv. Co., 553 B.R. 762, 772 (Bankr. D. Alaska 2016); In re Tri-Chek Seeds, Inc., No. 12-11409, 2013 WL 636031, at *4 (Bankr. S.D. Ga. Feb. 7, 2013); In re Visicon Shareholders Tr., 478 B.R. 292, 312-14 (Bankr. S.D. Ohio 2012). We are cognizant that dismissal or conversion based on unauthorized use of cash collateral is not mandatory in chapter 13 cases as it is in chapter 11 cases, compare 11 U.S.C. § 1307(c) (providing that court "may" convert or dismiss "for cause") with 11 U.S.C. § 1112(b) (providing that court "shall" convert or dismiss "for cause"). Nonetheless, these cases, by extension, bolster the bankruptcy court's decision to convert the Debtor's chapter 13 case to one under chapter 7. Cf. Stearns v. Pratola (In re Pratola), 589 B.R. 779, 792 (N.D. Ill. 2018) (determining cause under § 1307(c) by looking to case law discussing § 1112(b)(1)); Piazza v. Nueterra Healthcare Physical Therapy, LLC, 469 B.R. 388, 391 (S.D. Fla. 2012) (recognizing that §§ 1112(b)(1) and 1307(c) contain "identical" provisions authorizing dismissal or conversion "for cause" and that "a consistent interpretation should prevail"), aff'd, 719 F.3d 1253 (11th Cir. 2013).

to use cash collateral in the operation of his business, paying expenses not identified in the Budget and/or in excess of the authorized variance.

While the Debtor's unauthorized use of cash collateral in violation of § 363(c)(2), standing alone, may have constituted sufficient cause to warrant conversion, the Debtor's statutory infringements were compounded by his blatant disregard of the bankruptcy court's orders prohibiting and/or limiting his use of cash collateral. Indeed, failure to comply with an order of the court is an appropriate consideration under a § 1307(c) analysis, even if the failure to comply is not "willful[] or the product of bad faith . . . .'" In re Cal. Palms Addiction Recovery Campus, Inc., No. 22-40065, 2022 WL 2116643, at *14 (Bankr. N.D. Ohio June 10, 2022) (citation omitted); see also Howard, 284 F.3d at 323 (affirming dismissal under § 1307(c) due to debtor's failure to comply with court order to file state income tax returns); In re Zuckerman, BAP No. MS 12-085, 2013 WL 8374121, at *2 (B.A.P. 1st Cir. Apr. 24, 2013) (affirming dismissal under § 1307(c)(1) due to debtor's failure to comply with court order to file certificate of service for her chapter 13 plan); In re Jenkins, No. 13-40793, 2014 WL 268688, at *5 (Bankr. W.D. Ky. Jan. 23, 2014) (finding debtors' failure to, among other things, comply with "Operating Order" requiring them to file monthly operating reports constituted cause under analogous § 1208(c)).

We conclude, therefore, that the Debtor's unauthorized use of cash collateral in violation of both § 363(c)(2) and the bankruptcy court's orders provides ample support for the bankruptcy court's determination of cause under § 1307(c).[12]

---

[12] On appeal, the Debtor essentially challenges the propriety of the cash collateral orders themselves, arguing that the MDOR was not entitled to adequate protection because it was not secured and because it had "waived" adequate protection payments. The Debtor, however, did not appeal any of the cash collateral orders at the time they were entered or identify any such orders in the notice of appeal which commenced this appeal. Nor did he include any issues challenging the propriety of the cash collateral orders in his statement of the issues on appeal filed pursuant to Fed. R. Bankr. P. 8009 or the statement of

While our analysis could end here, we note that the bankruptcy court considered (we think appropriately) an additional factor in finding cause—the persistent inaccuracies and inconsistencies in the Debtor's budget reports and sales tax returns.[13]

## B.       Debtor's Inaccurate and Inconsistent Financial Disclosures

One of a debtor's primary obligations is to provide complete and accurate financial information. "'[A]ccuracy, honesty, and full disclosure are critical to the functioning of bankruptcy,' and are 'inherent in the bargain for the discharge.'" In re Kestell, 99 F.3d at 149 (citation omitted); see also In re Jenkins, 2014 WL 268688, at *4 ("Full, complete, and candid disclosure is essential to the operation of the bankruptcy system.") (citations omitted). "When a debtor misrepresents, lies, or otherwise misleads the court, there is no 'Oops defense.'" Meredith v. Roberts (In re Roberts), No. 11-60690, 2013 WL 441378, at *3 (Bankr. S.D. Ga. Jan. 24, 2013) (quoting Marrama, 549 U.S. at 370). Persistent inaccuracies and omissions in a debtor's financial disclosures to the bankruptcy court can give rise to "cause" under § 1307(c). See, e.g., In re Henson, 289 B.R. 741, 752 (Bankr. N.D. Cal. 2003) (finding cause existed primarily because debtor "ha[d] not provided reliable information about his financial condition" and "ha[d] shown that he [wa]s not capable of performing as a [c]hapter 13 [d]ebtor"); see also In re Roberts, 2013 WL 441378, at *3 (recognizing that "[f]ailure to make accurate disclosure in bankruptcy documents" constitutes cause under § 1307(c)) (citation omitted); Baker v. Salamone, No. 1:11-cv-1423 (GLS), 2012 WL 1086069, at *2 (N.D.N.Y. Apr. 2, 2012)

---

issues contained in his appellate brief. Therefore, issues relating to the propriety of the cash collateral orders are not before us.

[13]  Though the Debtor challenges the bankruptcy court's determination of cause under § 1307(c), he does not argue that the bankruptcy court should have dismissed, rather than converted, his chapter 13 case. Therefore, any issues as to the bankruptcy court's choice of remedy are waived. See In re Zizza, 500 B.R. at 294 n.3 (ruling that debtor who did not challenge decision to convert rather than dismiss chapter 13 case waived the issue).

(affirming dismissal for cause under § 1307(c) due to "discrepancies" on debtor's schedules and petition).

Here, the record is replete with budget reports filed by the Debtor containing sales figures that were vastly different from the amounts reported on his sales income tax returns filed with the MDOR. In response to the Order to Show Cause, the Debtor admitted that the figures reported to both the bankruptcy court and the MDOR were incorrect. Despite his filing of amended tax returns and a revised budget and Budget Report, the revised sales income figures were still inconsistent, and the Revised Budget Report could not be reconciled with those listed on the amended tax returns. The bankruptcy court was understandably troubled by the "changing numbers," which made it impossible to discern which figures were accurate. Appropriately, this factored into the bankruptcy court's finding of cause to convert the case. See In re Roberts, 2013 WL 441378, at *3; Baker, 2012 WL 1086069, at *2.

In challenging the bankruptcy court's conversion of the case to one under chapter 7 based on the "[a]llegedly conflicting financial information," the Debtor does not acknowledge or address the specific discrepancies between the monthly sales income reported to the bankruptcy court and that reported to the MDOR in his sales tax returns. Further, although the Debtor makes general, unsupported assertions that the "conflicts" in his financial reports were "not unreasonable" and that he has "no training in accounting," he offers no reasonable explanation for the filing of inaccurate and inconsistent financial reports and sales tax returns. See In re Jenkins, 2014 WL 268688, at *5 (rejecting, when dismissing chapter 12 case under analogous § 1208(c), debtors' argument that inaccuracies in their schedules, statement of financial affairs, and operating reports "were not intentional," as it was debtors' "duty" to provide full and accurate information).

20

In short, the Debtor's repeated filing of inaccurate and inconsistent financial reports and sales tax returns further buttresses the bankruptcy court's decision to convert the case to chapter 7.

## **CONCLUSION**

For the foregoing reasons, we conclude that the bankruptcy court did not abuse its discretion in converting the Debtor's case to chapter 7 for cause under § 1307(c). Accordingly, we **AFFIRM** the Conversion Order.